STATE OF NORTH CAROLINA v. CLYDE RATHBONE

No. 8524SC268

(Filed 3 December 1985)

1. **Homicide §§ 9, 21.1— murder—motion to dismiss based on self-defense denied—no error**

    The trial court did not err in a murder prosecution by denying defendant's motion to dismiss, which was based on self-defense or defense of defendant's wife, where the State offered evidence that defendant had fired

State v. Rathbone

four shots and that two bullets had been shot through a bedroom door; powder burns on the outside of the door indicated that the shots had been fired from the hallway into the bedroom through the closed door; the victim was found dead in the bedroom with an empty pistol; he had been shot four times, once in the back; and defendant had stated to an emergency medical technician that he had shot the victim because "he came in and tried to take over." That statement was inconsistent with self-defense and the evidence permitted an inference that defendant shot the victim in the back as he was retreating with an empty pistol and twice more through the closed door.

## 2. Criminal Law § 86.3— prior conviction—admitted on direct examination—further questions on cross-examination—no error

The trial court did not err in a prosecution for murder by permitting the prosecution to question defendant about the facts of a prior assault conviction where defendant had testified on direct examination that he had been convicted of assault in Utah. The prosecutor's question as to whether the assault involved a shooting was no more than an inquiry into whether the conviction was for the more serious offense of assault with a deadly weapon, and the prosecutor did not press for details once defendant admitted the conviction but merely inquired as to punishment. N.C.G.S. 8C-1, Rule 609(a); N.C.G.S. 15A-1443(a).

## 3. Criminal Law § 162— prior criminal act—previously admitted—no error

The trial court did not err in a murder prosecution by admitting testimony concerning defendant's assault on a friend of the victim where defendant had testified to the same incident on direct examination.

## 4. Homicide § 28.3— murder—instruction on self-defense—no error

There was no error in a prosecution for murder where the trial court instructed the jury that defendant was not entitled to the benefit of self-defense if he was the aggressor or if he used excessive force where defendant did not object to the instruction and there was no plain error in that there was plenary evidence to support the verdict of guilty of voluntary manslaughter based on a killing committed in the heat of passion or by the use of excessive force in the exercise of self-defense, and defendant's statement that he shot the victim because the victim was trying to take over supported a reasonable inference that defendant initiated the exchange of gunfire. N.C.G.S. 15A-1443; N.C. Rules of App. Procedure 10(b)(2).

## 5. Criminal Law § 138— manslaughter—mitigating factors not found—no error

The trial court did not err in sentencing defendant for voluntary manslaughter by failing to find the mitigating factors that defendant acknowledged wrongdoing at an early stage of the criminal process, that he committed the offense under compulsion, or that he acted under provocation where there was no evidence that defendant acknowledged wrongdoing, no evidence of compulsion, and the evidence of strong provocation was not so manifestly credible that the court was compelled to accept it as true. N.C.G.S. 15A-1340.4(a)(2)(1), N.C.G.S. 15A-1340.4(a)(2)(b), N.C.G.S. 15A-1340.4(a)(2)(i).

APPEAL by defendant from *Lamm, Judge.* Judgment entered 26 October 1984 in Superior Court, MADISON County. Heard in the Court of Appeals 15 October 1985.

Defendant was charged in a bill of indictment proper in form with the murder of his brother, Charles Rathbone. At trial the State presented evidence which tended to show the following: Several months prior to June, 1984 defendant and his wife, Christine, moved in with defendant's father, Homer Rathbone, who was 79 years old, had suffered several strokes, and was in poor health. In early June Charles Rathbone, defendant's brother, came for a visit and was staying at Homer Rathbone's residence. On the morning of 11 June 1984 defendant took his father to the doctor. When they returned, Delbert Reed was at the house visiting Charles. Homer Rathbone and Delbert Reed sat on the front porch and talked. While they were sitting there, defendant came out of the house and struck Delbert on the neck with a power saw chain. Delbert got up and left. Shortly thereafter, Homer Rathbone heard gunshots from inside the house and heard Christine Rathbone say "Shoot him, shoot him, kill him." Homer Rathbone ran down to the highway and flagged down a passer-by for help.

Boyd Norton, an emergency medical technician, testified that he and his partner arrived at the Rathbone residence after the shooting. Defendant was lying on the floor on top of a .22 automatic rifle. Norton examined defendant and found two bullet wounds. Defendant told Norton that there was someone else in the bedroom. Norton found Charles, dead, lying across the bed with an empty pistol in his hand. He had a gunshot wound in his neck and at least two more in his chest. Defendant told Norton that Charles "came in and tried to take over and he shot him and killed him." Christine had a gunshot wound in her upper right arm. Defendant and Christine were taken to the hospital.

Sheriff E. Y. Ponder testified that when he arrived at the Rathbone home, defendant told him "I shot him, I don't know whether I killed him or not. . . . [H]e shot my wife first, and then . . . he shot me." Sheriff Ponder found two bullet holes in the door leading to Charles' bedroom. There were powder burns on the outside of the door around both holes. Four .22 caliber shell

State v. Rathbone

casings were found in various locations in the hall outside the door. In Sheriff Ponder's opinion, defendant had been drinking.

The autopsy report revealed that Charles had four gunshot wounds: one in the neck, two in the chest, and one in the back behind the shoulder. The pathologist, Dr. Richard Landau, testified that Charles died from bleeding caused by two bullets going through his right chest and lung. Charles had a blood alcohol level of .28.

Defendant's evidence tended to show the following: During the week that Charles Rathbone had been staying at the house he drank excessively; he had gotten drunk on the night of 10 June and had been drinking on the morning of 11 June. When defendant and Homer Rathbone returned from the doctor's office, Delbert Reed was there. He and Charles were drinking, which upset Homer Rathbone, so defendant told Delbert to leave. Defendant then went to Hot Springs and bought some whiskey for Charles. When he returned with the whiskey, Delbert Reed was still there. Defendant went outside to work in his garden. After about an hour, he returned to the house and found Delbert Reed sitting on the porch with Homer Rathbone. When he repeated his request for Delbert to leave, Delbert cursed him, so defendant struck him with the saw chain. Delbert left the porch and as defendant walked into the house, Charles shot Christine. Charles then shot at defendant, who ran into his bedroom and got his rifle. When he came out of the bedroom, Charles was holding Christine in front of him and shot defendant in the chest. Charles dragged Christine toward the door to his own room, and as he did so, she fell. Defendant shot three times and Charles disappeared into the bedroom.

Christine Rathbone testified that she was washing dishes when she "heard this racket." She went into the hall and saw Charles standing there with a gun in his hand. When she asked him what was the matter, he just looked at her and shot her in the arm. Then he grabbed her and she yelled "Charles, you've shot me, you've shot me." She felt as though she was going to pass out and doesn't remember anything that occurred thereafter.

The jury found defendant guilty of voluntary manslaughter. After a sentencing hearing, the court imposed judgment sentenc-

ing defendant to prison for a term of eight years, two years greater than the presumptive term. Defendant appeals.

*Attorney General Lacy H. Thornburg by Assistant Attorney General Walter M. Smith for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender Gordon Widenhouse for defendant appellant.*

MARTIN, Judge.

Defendant brings forward assignments of error relating to the sufficiency of the evidence, the admission of evidence, the jury instructions and the sentence. For the reasons stated herein, we find no prejudicial error.

[1] In his first assignment of error defendant argues that his motion to dismiss should have been allowed because the uncontradicted evidence showed, as a matter of law, that defendant killed Charles Rathbone in the exercise of his right of self-defense or defense of his wife. A thorough review of the evidence compels us to reject this contention.

Upon a defendant's motion to dismiss, the question before the court is whether there is substantial evidence of each essential element of the offense charged, and that defendant was the perpetrator of the offense. *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980). The evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference arising from the evidence. *Id.* When the State's evidence and defendant's evidence tend only to show that defendant acted in self-defense, then defendant's motion for nonsuit should be allowed. *State v. Johnson,* 261 N.C. 727, 136 S.E. 2d 84 (1964). Similarly, the motion for nonsuit should be allowed when the uncontradicted evidence shows that defendant killed the decedent in defense of a family member. *State v. Carter,* 254 N.C. 475, 119 S.E. 2d 461 (1961). However, the right to kill in defense of one's self or family member is not absolute. When one uses excessive force in the exercise of his right of self-defense, he loses the benefit of perfect self-defense and is guilty at least of voluntary manslaughter. *State v. Norris,* 303 N.C. 526, 279 S.E. 2d 570 (1981). Where the evidence is conflicting with respect to the issue of whether the force used by a defendant was excessive under the

circumstances, the question is properly submitted to the jury. *State v. Clark*, 65 N.C. App. 286, 308 S.E. 2d 913 (1983), *disc. rev. denied*, 310 N.C. 627, 315 S.E. 2d 693 (1984).

In the instant case, while defendant's testimony was to the effect that he fired three times at Charles after Christine had fallen to the floor, the State offered evidence that defendant had fired four shots and that two bullets had been shot through the bedroom door. Powder burns on the outside of the door indicated that the shots had been fired from the hallway into the bedroom through the closed door. Charles was found dead in the bedroom with an empty pistol; he had been shot four times, once in the back. This evidence permits an inference that defendant shot Charles in the back as he was retreating with an empty pistol and twice more through the closed door; the evidence is therefore sufficient to carry the case to the jury on the question of whether defendant used excessive force in self-defense. In addition, defendant's statement to Boyd Norton that he had shot Charles because "He came in and tried to take over" is inconsistent with defendant's claim of self-defense. We therefore hold that the court did not err in denying defendant's motion to dismiss.

[2] By his second assignment of error defendant contends that the trial court erred in permitting the prosecutor to question defendant about the facts of a prior assault conviction. On direct examination, defendant testified that he had been convicted of assault in Utah. On cross-examination, the following exchange occurred:

Q. That conviction of assault, did that involve a shooting?

Mr. Huff: Objection.

THE COURT: Overruled.

Q. Did it involve you shooting someone?

A. Yes.

Q. You spent time in prison for it?

A. Six months in jail.

For purposes of impeachment, a witness, including a defendant, may be cross-examined with respect to prior convictions. G.S. 8C-1, Rule 609(a); *State v. Finch*, 293 N.C. 132, 235 S.E. 2d 819

(1977). Where the conviction is established, there may be further inquiry into the time and place of the conviction and the punishment imposed. *Id.* This Court has held that inquiry into prior convictions which exceeds the limitations established in *Finch* is reversible error. *State v. Greenhill,* 66 N.C. App. 719, 311 S.E. 2d 641 (1984) (prosecutor inquired into weapons used and gender of victims in thirteen prior assaults); *State v. Bryant,* 56 N.C. App. 734, 289 S.E. 2d 630 (1982) (defendant admitted conviction for larceny, prosecutor proceeded with questions concerning details of theft of police radio from police station and defendant's use of the radio thereafter).

In the instant case, defendant testified on direct examination that he had been convicted of assault. The prosecutor's question as to whether the assault involved a shooting was basically no more than an inquiry into whether the conviction was, in reality, one for a more serious offense, i.e., assault with a deadly weapon. Once defendant admitted that it was, the prosecutor did not press for the details and merely inquired as to punishment, as permitted by *Finch.* Even if the inquiry transcended the bounds of *Finch*, we do not believe the error to be of such magnitude as to require a new trial under the test of prejudicial error contained in G.S. 15A-1443(a). Under the circumstances of this case, it is highly improbable that the evidence tended, as defendant asserts, "to lead the jury to convict defendant because he was prone to assault others by shooting them."

[3] In his third assignment of error defendant argues that the trial court erred in overruling defendant's objections to questions concerning his assault on Delbert Reed. Defendant contends that this testimony was irrelevant and highly prejudicial. Defendant, however, testified to the same incident on direct examination. When evidence is admitted over objection and the same evidence has already been admitted, or is subsequently admitted without objection, the benefit of the objection is lost. *State v. Tysor,* 307 N.C. 679, 300 S.E. 2d 366 (1983); 1 H. Brandis, Brandis on North Carolina Evidence § 30 (2d rev. ed. 1982).

[4] Defendant next contends that the trial court erred in instructing the jury that defendant was not entitled to the benefit of self-defense if he was the aggressor or if he used excessive force. We first note that defendant failed to object to the instruc-

tion at trial, as required to preserve this issue for appellate review. N.C.R. App. P. 10(b)(2). Defendant contends, nevertheless, that the instruction was plain error and is reviewable on appeal even in the absence of timely objection. The plain error rule, adopted by our Supreme Court in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), defines plain error as follows:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Id.* at 660, 300 S.E. 2d at 378 (quoting *United States v. McCaskill,* 676 F. 2d 995, 1002 (4th Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 381, 74 L.Ed. 2d 513 (1982) (footnotes omitted) ). In short, this rule waives Rule 10(b)(2) and allows review of fundamental errors or defects in jury instructions affecting substantial rights, which were not brought to the attention of the trial court. *See also State v. Brown,* 312 N.C. 237, 321 S.E. 2d 856 (1984).

The plain error rule does not negate Rule 10(b)(2) and, as explained in *Odom*, rarely will an improper instruction which was not objected to at trial justify reversal. Instead of the standard of prejudicial error contained in G.S. 15A-1443, we must determine whether the jury instruction complained of was erroneous, and if so, whether it had a "probable impact" on the jury's verdict.

Voluntary manslaughter is the unlawful killing of a human being, which is done without malice and without premeditation and deliberation. *State v. Norris, supra.* One who kills a person while in the heat of passion, on sudden and sufficient provocation, is guilty of voluntary manslaughter. *State v. Chamberlain,* 307 N.C. 130, 297 S.E. 2d 540 (1982). Additionally, a killing in the exercise of self-defense, but which fails to meet the standard of

perfect self-defense because the defendant was either the aggressor, without murderous intent, or used excessive force, is voluntary manslaughter. *Norris, supra.* In the instant case the trial judge instructed the jury on imperfect self-defense as follows: "you may convict the defendant of voluntary manslaughter, if the State proves that the defendant was simply the aggressor without murderous intent in bringing on the fight in which the deceased was killed or that the defendant used excessive force."

While this is a correct statement of the law, defendant contends that he was prejudiced because there was no evidence that he was the aggressor or that he used excessive force. He argues that since the court's instruction permitted the jury to base their verdict on a finding, unsupported by the evidence, that he exercised imperfect self-defense, he is entitled to a new trial. We disagree.

In this case, there is plenary evidence to support the jury's verdict finding defendant guilty of voluntary manslaughter on the grounds of a killing committed in the heat of passion or, as previously discussed, committed by the use of excessive force in the exercise of self-defense. We also believe that defendant's statement that he shot Charles after Charles "came in and tried to take over" supports a reasonable inference that defendant initiated the exchange of gunfire, rendering the court's instruction on "first aggressor" appropriate. However, even if we were to assume, *arguendo*, that the evidence was insufficient to warrant the "first aggressor" instruction, any error in giving the instruction could not have had a probable impact on the jury's verdict in view of the evidence supporting defendant's use of excessive force. Finding no "plain error" in the court's instructions and defendant having failed to object thereto, we must overrule this assignment of error.

[5] Finally, defendant assigns as error the failure of the trial judge to find three statutory mitigating factors, *ex mero motu.* In *State v. Gardner,* 312 N.C. 70, 320 S.E. 2d 638 (1984) our Supreme Court stated the rule that the duty of the trial judge to find a statutory mitigating factor that has not been submitted by defendant arises only when defendant meets the burden of proof established in *State v. Jones,* 309 N.C. 214, 306 S.E. 2d 451 (1983),

*i.e.*, the evidence in support of the statutory factor must be substantial, uncontradicted and manifestly credible.

Defendant first contends that the trial court erred in failing to find the factor listed in G.S. 15A-1340.4(a)(2)(1): that at an early stage in the criminal process defendant acknowledged wrongdoing to a law enforcement officer. We find no evidence that defendant ever acknowledged wrongdoing. To prove this mitigating factor defendant must have admitted culpability, responsibility or remorse, as well as guilt. *State v. Brewington*, 71 N.C. App. 442, 322 S.E. 2d 205 (1984). Instead, defendant has consistently maintained that he shot Charles in self-defense or defense of his wife.

Defendant next contends that the trial court erred in failing to find the factor in mitigation listed in G.S. 15A-1340.4(a)(2)(b), that he committed the offense under compulsion. We find no evidence of compulsion in the record.

Defendant finally contends that the court erred in failing to find that he acted under strong provocation, as set forth in G.S. 15A-1340.4(a)(2)(i). The question before us is whether the evidence of strong provocation is substantial, uncontradicted and manifestly credible. As we have discussed, differing inferences may be drawn from the evidence as to who initiated the altercation between defendant and his deceased brother. Although the testimony of defendant and his wife, if believed, would certainly tend to show strong provocation, we cannot say that it was manifestly credible so that the court was compelled to accept it as true. We find no error in the sentence.

No error.

Judges ARNOLD and WELLS concur.