STATE OF NORTH CAROLINA v. STEPHON RENEE WILSON

No. 8921SC454

(Filed 3 April 1990)

1. **Criminal Law § 425 (NCI4th) — prosecutor's closing argument — failure of alibi witness to appear — beyond evidence**

The trial court erred in a prosecution for felonious breaking or entering of a motor vehicle and misdemeanor larceny from a motor vehicle by allowing the prosecutor to argue that an alibi witness for defendant had not appeared because she had not wanted to lie. It was a fact that the witness

STATE v. WILSON

[98 N.C. App. 86 (1990)]

had not testified, but it was not a fact that she did not want to testify.

**Am Jur 2d, Trial §§ 245, 250.**

2. **Criminal Law § 86.3 (NCI3d)— prior convictions—cross-examination—further questions**

The trial court erred in a prosecution for felonious breaking or entering of a motor vehicle and misdemeanor larceny from a vehicle by allowing the prosecutor to cross-examine defendant about a prior conviction for accessory after the fact of armed robbery by asking whether he had had the money and the gun on him after he was arrested. The prosecutor was clearly trying to prejudice defendant by aligning the prior conviction with the current offense, and was not merely trying to determine if defendant's conviction was in reality for a more serious offense.

**Am Jur 2d, Evidence § 341.**

APPEAL by defendant from *Martin (Lester P.), Judge.* Judgment entered 12 January 1989 in Superior Court, FORSYTH County. Heard in the Court of Appeals 16 November 1989.

Defendant was charged under N.C. Gen. Stat. sec. 14-56 with felonious breaking and entering a motor vehicle, and under N.C. Gen. Stat. sec. 14-72 with misdemeanor larceny from a vehicle. Defendant was tried by a jury, convicted of both crimes and received a five-year and two-year sentence, respectively.

At trial, the State's evidence tended to show that on 1 June 1988 at approximately 10:10 a.m., the victim parked her car on Peters Creek Parkway in Winston-Salem, North Carolina, and proceeded to enter a clothing store to return some merchandise. Upon completing the transaction, the victim returned to her car at approximately 10:15 a.m.

The victim opened her car door and placed her purse on the floor behind the driver's seat. Her purse contained twenty-seven dollars, credit cards, a gold pen and pencil, and several other items of personal value. As she was bending down, she saw a black hand reaching for her purse. As she looked up, she saw a black man very close to her looking at her. The man took her purse and ran across the parking lot.

STATE v. WILSON

[98 N.C. App. 86 (1990)]

The victim ran after the man but lost sight of him as he ran toward National Drive. The victim then went into Liberty Lincoln-Mercury across the street and called the police. The victim described the suspect to law enforcement officers as a black male, medium build, five feet ten inches tall, with short hair, wearing a light blue shirt and navy shorts.

Officer M. T. Tucker immediately cruised the area looking for a person who fit that description. Within a few minutes, Officer Tucker observed a suspect fitting that description at an apartment complex on Hutton Street, less than a half mile away. After speaking with the suspect, who was later identified as Stephon Renee Wilson, the defendant in this action, Officer J. P. Davis brought the victim to the apartment complex. The victim observed the suspect for several minutes and identified him as the man who stole her purse. After the victim made the identification, the police searched defendant's apartment and found no incriminating evidence. The victim identified the same person at trial as the defendant.

Defendant and his wife testified at trial that they were in their apartment the entire morning. They stated that they were awakened at approximately 9:35 a.m. by Cynthia Caldwell and someone named "Vertie," who stayed about an hour. Defendant's attorney made several attempts to subpoena Ms. Caldwell to testify as an alibi witness for defendant, but she was not located.

The trial court denied defendant's motion for a continuance to locate the alibi witness and proceeded with the trial. At trial, defendant's wife testified as an alibi witness. Willie Wall also testified for defendant and alleged that he saw a man named Darryl Roseboro with the victim's purse shortly after the theft incident. Mr. Roseboro also generally fit defendant's description.

Mr. Roseboro testified at trial that he did not take the victim's purse. The victim did not waiver from her identification that defendant was the person who stole her purse. Benjamin Dease, an employee of Liberty Lincoln-Mercury, testified that he saw defendant walk by Liberty between 9:00 a.m. and 10:00 a.m. on the morning of 1 June 1988.

After closing arguments, the jury deliberated and convicted defendant of felonious breaking and entering a motor vehicle and misdemeanor larceny. From this conviction and judgment, defendant appeals.

STATE v. WILSON

[98 N.C. App. 86 (1990)]

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Elisha H. Bunting, Jr., for the State.*

*Wilson, DeGraw, Johnson & Rutledge, by Dean B. Rutledge, for defendant-appellant.*

ORR, Judge.

Defendant brings forward five assignments of error for which he maintains a new trial is required. We agree for the reasons set forth below and find that defendant is entitled to a new trial.

[1] Defendant argues that the trial court impermissibly overruled defendant's objection to the prosecutor's jury argument about Cynthia Caldwell's absence as an alibi witness.

In his closing remarks, the prosecutor stated that defendant's two alibi witnesses (other than his wife), Cynthia Caldwell and "Vertie," did not testify for defendant because they did not want to lie. The prosecutor stated:

> Account even from the defendant's own mouth and his wife's own mouth, there would only be two people, two people that could account for him on that morning. Cynthia Caldwell and somebody named Vertie. And did they come in here and put their hand on the Bible and tell you that? No, they didn't. And I submit to you they didn't for one reason because they couldn't do it. They didn't want to lie.

Defendant objected on the basis that the statement was unfair and exceeded the bounds of propriety. Defendant previously testified that Ms. Caldwell did not testify because she was unable to be located after numerous attempts to do so.

Closing arguments are left usually to the discretion of the trial court, and counsel must be permitted wide latitude. *State v. King*, 299 N.C. 707, 712, 264 S.E.2d 40, 44 (1980) (citations omitted). Both sides are permitted to argue to the jury the law and facts in evidence and all reasonable inferences therefrom. *Id.* (citations omitted). Counsel may not argue incompetent and prejudicial matters and "may not 'travel outside the record' by injecting into his argument facts of his own knowledge or other facts not included in the evidence." *Id.* at 712-13, 264 S.E.2d at 44 (citations omitted). *See also* N.C. Gen. Stat. sec. 15A-1230(a).

STATE v. WILSON

[98 N.C. App. 86 (1990)]

In the case before us, both defendant and his wife testified that they were in their apartment during the period of time in which the crime occurred. The prosecutor, on cross-examination, questioned defendant and his wife about Cynthia Caldwell and "Vertie." Defendant testified that he had tried to get in touch with Ms. Caldwell "numerous of [sic] times, . . . did every possible thing I could to get her in here," and that "[s]he, knew she had to come [to court]."

The prosecutor then asked defendant if he asked Ms. Caldwell to come to court and testify that defendant was at his apartment on the morning of 1 June 1988. Defendant replied affirmatively, and the prosecutor then pointed out to defendant that Ms. Caldwell was not present. In his closing argument, the prosecutor stated in a conclusive manner that the only reason Ms. Caldwell and "Vertie" did not testify for defendant was because they did not want to lie for him.

We hold that this was an impermissible argument to the jury. The prosecutor was arguing a fact not in evidence. It is a fact that Ms. Caldwell did not testify for defendant. It is not a fact that she did not *want* to testify for him. Moreover, while our State allows a prosecutor to argue to a jury "defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State," *State v. Howard*, 320 N.C. 718, 728, 360 S.E.2d 790, 796 (1987) (citations omitted), we find that the prosecutor's arguments in the case before us went beyond arguing that defendant failed to produce exculpatory evidence. In our case, the prosecutor argued that defendant failed to produce his alibi witnesses *because* the witnesses did not want to lie.

[2] Defendant further argues that the trial court erred in allowing the prosecutor to cross-examine defendant about a prior conviction and cross-examine defendant's wife concerning defendant's affidavit of indigence.

On cross-examination, defendant testified as follows:

Q. All right. Records show on July 6, 1987, you were convicted of accessory after the fact of armed robbery?

A. I was convicted of that, yes.

. . .

STATE v. WILSON

[98 N.C. App. 86 (1990)]

Q. And when you were arrested on the robbery charge, did you have the money on you then?

. . .

MR. RUTLEDGE: Objection, Your Honor, has no relevance at all to this case.

MR. SAUNDERS: Does so, Your Honor.

THE COURT: Overruled.

. . .

Q. Did you have the money on you then?

A. I had some of it.

Q. Did you have the gun on you?

A. No sir, I didn't.

For impeachment purposes, any witness, including a defendant, may be cross-examined concerning prior convictions. N.C. Gen. Stat. sec. 8C-1, Rule 609(a); *State v. Finch*, 293 N.C. 132, 141, 235 S.E.2d 819, 824 (1977) (citations omitted), *abrogation recognized by, State v. Harrison*, 90 N.C. App. 629, 360 S.E.2d 624 (1988). *See also State v. Murray*, 310 N.C. 541, 313 S.E.2d 523 (1984). If a conviction is established, the witness may be questioned further concerning the time and place of the conviction and the punishment imposed. *Id.* (citation omitted). "Strong policy reasons support the principle that ordinarily one may not go into the details of the crime by which the witness is being impeached . . . [because such details] unduly distract the jury from the issues properly before it, harass the witness and inject confusion into the trial. . . ." *Id.*

Any inquiry that exceeds these bounds is reversible error. *State v. Greenhill*, 66 N.C. App. 719, 311 S.E.2d 641 (1984); *State v. Bryant*, 56 N.C. App. 734, 289 S.E.2d 630 (1982). We hold that the prosecutor exceeded these bounds, and the trial court committed reversible error by allowing this line of questioning. The record is clear that when the prosecutor asked defendant if he had the money or the gun on him, the prosecutor was trying to prejudice the jury by aligning the prior conviction with the current offense.

The State's reliance on *State v. Rathbone*, 78 N.C. App. 58, 336 S.E.2d 702 (1985), *disc. rev. denied*, 316 N.C. 200, 341 S.E.2d 582 (1986), is misplaced. In *Rathbone*, this Court held that it is

not error for a prosecutor to question a defendant about details of a prior conviction when the questions are no more than an inquiry into whether the conviction was for a more serious offense. *Id.* at 64, 336 S.E.2d at 705. We find that the prosecutor's questions in the case *sub judice* were not merely to determine if defendant's conviction, in reality, was for a more serious offense. It is clear to this Court that the prosecutor's questions had the potential to prejudice the jury and harass the witness. Moreover, we are unable to conclude that this evidence was not prejudicial to defendant. The evidence at trial was frequently controverted, and the credibility of the witnesses was crucial to the determination of defendant's guilt.

Because we hold that the trial court committed reversible error on the above grounds, we need not reach defendant's remaining assignments of error.

New trial.

Judges EAGLES and PARKER concur.