STATE OF NORTH CAROLINA v. JOHN COY LYNCH

No. 87A92

(Filed 30 July 1993)

1. **Evidence and Witnesses §§ 2983, 2898.5 (NCI4th) — murder — details of prior convictions — not admissible — *Gibson* overruled**

The trial court erred in a first-degree murder trial by allowing the district attorney to exceed the scope of inquiry allowable under N.C.G.S. § 8C-1, Rule 609(a) in cross-examining defendant about prior convictions. Although the Court of Appeals in *State v. Harrison*, 90 N.C. App. 629, read *State v. Murray*, 310 N.C. 541, as broadening the scope of cross-examination about the facts of prior convictions and the Supreme Court took the same view in *State v. Gibson*, 333 N.C. 29, both the Court of Appeals and the Supreme Court overstated the holding in *Murray*. *Harrison* and *Gibson* are overruled and the rule stated in *State v. Finch*, 293 N.C. 132 and reaffirmed in *State v. Garner*, 330 N.C. 273, is affirmed. The State is prohibited from eliciting details of prior convictions other than the name of the crime and the time, place, and punishment for impeachment purposes under N.C.G.S. § 8C-1, Rule 609(a) in the guilt-innocence phase of a criminal trial.

**Am Jur 2d, Witnesses § 926.**

2. **Evidence and Witnesses § 2916 (NCI4th)— murder—cross-examination—prior convictions—relevance**

Details of defendant's prior convictions were not admissible in a murder prosecution where the State contended that the governing rule is N.C.G.S. § 8C-1, Rule 611(b) rather than 609(a) because the evidence arose during cross-examination rather than on direct. Rule 611(b) neither stands alone nor preempts other rules of evidence; evidence admissible during cross-examination remains subject to the limits of other rules governing relevancy, including Rules 402, 403, and 404, as well as Rule 609.

**Am Jur 2d, Evidence §§ 339-341, 346.**

3. **Evidence and Witnesses § 263 (NCI4th)— murder—cross-examination of defendant—details of prior offenses—not admissible to rebut character evidence**

The trial court erred in a first-degree murder prosecution in allowing the State to cross-examine defendant about the details of past convictions. Although the State argued that N.C.G.S. § 8C-1, Rule 404(a)(1) permits the prosecution to offer evidence of a pertinent trait of the defendant's character to rebut such evidence when offered first by the defendant, defendant's brief summary of his criminal record did not constitute evidence of a pertinent character trait for Rule 404(a)(1) purposes.

**Am Jur 2d, Evidence §§ 339-341, 346.**

**Admissibility of evidence of pertinent trait under Rule 404(a) of the Uniform Rules of Evidence. 56 ALR4th 402.**

4. **Evidence and Witnesses § 287 (NCI4th)— murder—cross-examination—prior offenses—not admissible**

Evidence of a murder defendant's prior offenses was not admissible under N.C.G.S. § 8C-1, Rule 404(b) where the Supreme Court could discern no logical relationship between the details of the prior crimes brought out on cross-examination and the crimes charged.

**Am Jur 2d, Evidence §§ 339-341, 346.**

5. **Evidence and Witnesses § 3019 (NCI4th)— murder—cross-examination—prior offenses—door not opened**

A murder defendant did not open the door to cross-examination about prior offenses with his brief summary of

his criminal record. Although the State argued that it may elicit evidence on cross-examination that would be otherwise incompetent or irrelevant in order to rebut or explain evidence offered by the defendant, such cross-examination is permissible not to expose an entirely new line of inquiry otherwise impermissible under the Rules, but only to correct inaccuracies or misleading omissions in the defendant's testimony or to dispel favorable inferences arising therefrom. Defendant's brief summary of his criminal record was accurate and complete and he did not use it to create inferences favorable to himself. The only purpose served by eliciting the details of the prior convictions was to create for the jurors an image of defendant as a person with a bad character who was inclined to commit crimes and who probably had no justification for the shootings in this case.

Am Jur 2d, Evidence § 341; Witnesses §§ 834 et seq.

6. **Evidence and Witnesses § 725 (NCI4th) — murder — cross-examination of defendant — other offenses — prejudicial**

There was prejudicial error in a first degree murder prosecution where the court permitted the State to cross-examine defendant about prior offenses. Defendant's defense was that he was subjected to a violent and unprovoked physical assault under circumstances which made him fear that his life was endangered by both of the victims; testimony pertinent to his self-defense claim was conflicting; and the jurors may have found defendant's claim of self-defense less persuasive, or may have been inclined to view defendant as more culpable, as a result of the detailed evidence tending to show that he was naturally prone to violence and had committed other unjustified assaults.

Am Jur 2d, Appeal and Error §§ 797 et seq.; Evidence §§ 339-341, 346; Witnesses §§ 834-836.

Admissibility of evidence of pertinent trait under Rule 404(a) of the Uniform Rules of Evidence. 56 ALR4th 402.

Appeal of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment upon his conviction of first-degree murder, entered by Allen (J.B., Jr.), J., on 15 October 1991 in Superior Court, Alamance County. Defendant was also convicted of voluntary manslaughter and sentenced

**STATE v. LYNCH**

[334 N.C. 402 (1993)]

to twenty years imprisonment for that offense. On 22 September 1992 this Court allowed defendant's motion to bypass the Court of Appeals on the voluntary manslaughter conviction. Heard in the Supreme Court 15 April 1993.

*Michael F. Easley, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Following a capital trial defendant was found guilty of first-degree murder in the death of James Smith and of voluntary manslaughter in the death of Ted Cook. The jury recommended a sentence of life imprisonment for the murder conviction. The trial court entered judgment accordingly and imposed a sentence of twenty years for the manslaughter conviction. In this appeal defendant challenges the scope of the State's cross-examination regarding details of defendant's prior convictions. He argues the cross-examination violated the scope of inquiry allowable under Rule of Evidence 609(a) and that it was not independently admissible under Rule 611(b), Rule 404(a)(1), or Rule 404(b). We agree that the scope of the inquiry exceeded that which is permissible under these rules, and we accordingly award a new trial.

The evidence tended to show that in the early morning hours of 3 August 1990 defendant came to the trailer victims Smith and Cook shared with their respective girlfriends and children to buy cocaine or to collect money from previous drug dealings. An altercation ensued: Cook hit defendant repeatedly about the face and head, but defendant smiled and stood passively with his arms crossed, neither striking back nor saying anything. When defendant tried to leave, Cook stopped him at the door, threatened to give him "another ass-whipping" if he ever came back early in the morning, and pushed him out the door.

As he walked away from the trailer, defendant turned and said, "Don't worry, m—— f——, I'll be back." Cook came after him, saying, "What did you say, m—— f——?" Defendant immediately stopped and shot Cook three times at close range. Defendant began to run away, then turned and came back toward the trailer. He

entered the trailer holding a gun, and Smith pushed one of the women to the floor. Smith struck defendant rapidly with a hammer several times while defendant fired several shots at Smith. Both Smith and Cook died from gunshot wounds.

Whether Smith grabbed the hammer after defendant shot the gun the first time or whether it was already in his hand and was seen by defendant as he came inside was disputed at trial. The exact language of the threat issued by Cook was also disputed. Defendant asserted that Smith said, "We will kill you before you leave here." Defendant testified that the facts that this threat included Smith, and that he saw Smith nod to Cook immediately before Cook attacked him, made him fear an attack from Smith as well as from Cook.

At trial defendant began his testimony during direct examination with brief autobiographical information that included a summary of his criminal record. He admitted the following prior convictions: simple assault and being drunk and disruptive on 13 February 1980; carrying a concealed weapon on 29 April 1980; trespassing on 27 March 1981; being drunk and disruptive and carrying a concealed weapon on 17 September 1981; assault with a deadly weapon inflicting serious injury on 12 August 1982; and carrying a concealed weapon and possession of marijuana in Georgia in March 1985.

During cross-examination the prosecution asked defendant what type of weapon was involved in his 1980 conviction for carrying a concealed weapon. Defense counsel immediately objected. In the absence of the jury defense counsel argued that details of prior crimes should be impermissible for impeachment purposes under Rule 609(a) on the grounds that they are not germane to defendant's truthfulness. The court overruled these objections. The jury returned, and cross-examination by the District Attorney proceeded as follows:

Q. Mr. Lynch, your 1980 conviction for carrying a concealed weapon, what kind of weapon was that?

MR. MONROE [Defense Counsel]: Object for the record, your Honor.

COURT: Overruled. You may answer.

A. Brass knuckles.

MR. MONROE: Move to strike from the record.

COURT: Motion denied.

Q. Your 1981 conviction for carrying a concealed weapon, what kind of weapon was that?

MR. MONROE: We object again, your Honor.

COURT: Objection overruled.

A. A box cutter.

MR. MONROE: Move to strike that.

COURT: Motion denied.

Q. Your 1985 conviction in Georgia for carrying a concealed weapon, what kind of weapon was that?

MR. MONROE: Object.

COURT: Overruled.

A. A lock-blade knife in a pouch on my side.

MR. MONROE: Move to strike.

COURT: Motion denied.

Q. In 1982 your assault with a deadly weapon inflicting serious injury, what kind of weapon did that involve?

A. A knife.

MR. MONROE: Object.

COURT: Overruled.

. . . .

MR. MONROE: . . . [M]ove to strike his answer then.

COURT: Motion denied.

Q. Your 1985 convictions for two counts of assault with a deadly weapon inflicting serious injury, what kind of weapon did they involve?

MR. MONROE: Object.

COURT: Objection overruled.

A. A gun.

Q. What kind of gun?

A. A .22 caliber pistol.

MR. MONROE: Move to strike the last two answers, your Honor.

COURT: Motion denied.

Q. And what sentence did you receive in that incident, October 12, 1985?

MR. MONROE: Object to that, your Honor.

COURT: Objection overruled.

A. I took a plea bargain for two counts of assault—assault with a deadly weapon inflicting serious bodily injury.

MR. MONROE: Move to strike.

COURT: Motion denied.

Q. What was the sentence, Mr. Lynch?

MR. MONROE: Object.

COURT: Objection overruled.

A. Six years.

MR. MONROE: Move to strike.

COURT: Motion denied.

The prosecution proceeded to inquire about a shooting incident in 1985 involving Shirley Sutton and Wesley Hall. Defense counsel entered a line objection to all further questioning about this incident and a motion to strike all related answers. Over these overruled objections, defendant answered numerous, detailed questions about his living arrangements with Sutton, words he spoke to her when he entered her home, his confusion about the circumstances, his confusion about whether he pled guilty to those shootings, and the fact that he was in a blackout at the time.

At the conclusion of defendant's evidence, defense counsel moved for a mistrial on the grounds that the excessive scope of cross-examination violated Rules 607, 608, 606, and 404 and prejudiced defendant. Defendant's motion was denied.

[1] When a defendant chooses to testify, evidence of prior convictions is admissible for the purpose of impeaching his credibility

STATE v. LYNCH

[334 N.C. 402 (1993)]

under Rule 609(a). This rule provides: "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime punishable by more than 60 days confinement shall be admitted if elicited from him or established by public record during cross-examination or thereafter." N.C.G.S. § 8C-1, Rule 609(a) (1992). The permissible scope of inquiry into prior convictions for impeachment purposes is restricted, however, to the name of the crime, the time and place of the conviction, and the punishment imposed. *State v. Finch,* 293 N.C. 132, 141, 235 S.E.2d 819, 825 (1977). "Strong policy reasons support the principle that ordinarily one may not go into the details of the crime by which the witness is being impeached. Such details unduly distract the jury from the issues properly before it, harass the witness and inject confusion into the trial of the case." *Id.* This Court recently reaffirmed this rule, stating that although *Finch* is a pre-Rules case, its limitations on inquiries concerning prior convictions are consistent with Rule 609(a). *State v. Garner,* 330 N.C. 273, 288-89, 410 S.E.2d 861, 870 (1991). In addition, the Court of Appeals has applied the *Finch* rule in a number of decisions holding that exceeding the limits stated in *Finch* is reversible error. *See, e.g., State v. Gallagher,* 101 N.C. App. 208, 211, 398 S.E.2d 491, 493 (1990); *State v. Wilson,* 98 N.C. App. 86, 91, 389 S.E.2d 626, 629 (1990); *State v. Rathbone,* 78 N.C. App. 58, 64, 336 S.E.2d 702, 705 (1985), *disc. rev. denied,* 316 N.C. 200, 341 S.E.2d 582 (1986).

In *State v. Harrison,* 90 N.C. App. 629, 633-34, 369 S.E.2d 624, 626-27 (1988), however, the Court of Appeals read *State v. Murray,* 310 N.C. 541, 551, 313 S.E.2d 523, 530 (1984) as broadening the scope of cross-examination about facts of prior convictions beyond the *Finch* rule. In *State v. Gibson,* 333 N.C. 29, 47-48, 424 S.E.2d 95, 105 (1992), this Court took the same view. In the process, both the Court of Appeals and this Court overstated the holding in *Murray,* a pre-Rules case. The questions asked of the defendant in *Murray* related to the factual elements of the prior offenses and were descriptive of the particular crimes of which the defendant had been convicted. The questions did not relate to tangential circumstances of the offenses involved, as did the questions here. See *Murray,* 310 N.C. at 549-50, 313 S.E.2d at 529-30. More importantly, in *Gibson* this Court overlooked a holding in *Garner,* a case filed only a little over a year earlier, which held that the *Finch* limitations on inquiries concerning prior convictions comported with Rule 609(a). *Murray,* then, was a pre-Rules case which

did not expand the *Finch* rule to the extent we held it did in *Gibson*, while *Garner* was a post-Rules case that expressly confirmed the applicability of the *Finch* limitations in interpreting and applying Rule 609(a).

"This Court has never overruled its decisions lightly. No court has been more faithful to *stare decisis*." *Rabon v. Hospital*, 269 N.C. 1, 20, 152 S.E.2d 485, 498 (1967); *see also Mial v. Ellington*, 134 N.C. 131, 139, 46 S.E. 961, 963-64 (1903). Here, however, we are forced to acknowledge that in *Gibson* we overruled, *sub silentio*, our recent precedent established in *Garner*. Thus, we now face conflicting lines of authority in our recent decisions, one represented by *Garner* and the other by *Gibson*. Both lines cannot stand; we must declare to which line we will adhere.

In the interest of clarity and certainty for the bench and bar, we conclude that we should overrule *Harrison* and *Gibson* and adhere to the rule established in *Garner, viz,* that the *"Finch . . .* limitations on inquiries concerning prior convictions are consistent with rule 609(a)." *Garner*, 330 N.C. at 288-89, 410 S.E.2d at 870. For the "[s]trong policy reasons" stated in *Finch*, we again reaffirm the rule stated therein prohibiting the State from eliciting details of prior convictions other than the name of the crime and the time, place, and punishment for impeachment purposes under Rule 609(a) in the guilt-innocence phase of a criminal trial. This result conforms to the federal practice and to the generally prevailing state practice. *See, e.g., United States v. Harding*, 525 F.2d 84, 88-89 (7th Cir. 1975); *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987). *See generally* Wade R. Habeeb, Annotation, *Propriety, on Impeaching Credibility of Witness in Criminal Case by Showing Former Conviction, of Questions Relating to Nature and Extent of Punishment*, 67 A.L.R. 3d 775 (1975). In this case, we hold the prosecution's repeated inquiries into the facts of prior crimes improperly exceeded the *Finch* limitations on admissibility of evidence of prior convictions for impeachment purposes under Rule 609(a).

[2] Alternatively, the State contends that because the prior crimes evidence here arose during cross-examination rather than on direct, the governing rule is Rule 611(b), not Rule 609(a) or the *Finch* rule. Rule 611(b) provides: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C.G.S. § 8C-1, Rule 611(b) (1992). Rule 611(b), however, neither stands alone nor preempts other rules of evidence. It allows cross-

examination only on matters *relevant* to issues in the case; " '[r]ele-
vant evidence' means evidence having any tendency to make the
existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be
without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Evidence
admissible during cross-examination remains subject to the limits
of other rules governing relevancy, including Rules 402, 403, and
404, as well as to Rule 609.

[3] The State also argues that Rule 404(a)(1) permits the prosecu-
tion to offer evidence of a pertinent trait of the defendant's character
to rebut such evidence when offered first by the defendant, despite
the general prohibition in that rule against character evidence.
Typically, Rule 404(a)(1) authorizes the prosecution to delve into
examples of the defendant's violent actions when the defendant
has put his character into evidence by testifying, for example,
about his peaceable nature. *E.g., State v. Syriani*, 333 N.C. 350,
382, 428 S.E.2d 118, 133 (1993) (cross-examination about defendant's
threats and acts of violence toward his wife and children permis-
sible after defendant testified that he was a loving husband and
father); *State v. Garner*, 330 N.C. at 289-90, 410 S.E.2d at 870
(cross-examination on details of defendant's prior assaults on his
wife properly allowed after defendant put on evidence of his general
good character and devotion to her).

If in this case defendant had offered testimony about his
peaceable nature or other positive character trait, the prosecu-
tion would have been entitled under Rule 404(a)(1) to rebut such
character evidence by showing his prior violent crimes and drug
use. Defendant's brief summary of his criminal record did not con-
stitute evidence of a pertinent character trait for Rule 404(a)(1)
purposes, however. Because he did not put his general character
in evidence, the State was not entitled to do so in the guise of
rebuttal.

[4] The State also argues detailed evidence of prior crimes is
admissible under Rule 404(b), which provides:

Evidence of other crimes, wrongs, or acts is not admissible
to prove the character of a person in order to show that he
acted in conformity therewith. It may, however, be admissible
for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake,
entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1992). Rule 404(b) operates as a general rule of inclusion, but it excludes evidence if its *only* probative value relates to the defendant's character or propensity to commit the crimes. *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). The admissibility of evidence under this rule is guided by two further constraints — similarity and temporal proximity. *State v. Price*, 326 N.C. 56, 69, 388 S.E.2d 84, 91 (1990), *judgment vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990), *on remand*, 331 N.C. 620, 418 S.E.2d 169 (1992), *judgment vacated on other grounds*, --- U.S ---, 122 L. Ed. 2d 113 (1993).

In the case before us, we cannot discern any logical relationship between the details of the prior crimes brought out on cross-examination and the crimes charged. That the defendant had used various weapons in other crimes had no bearing on any element of the offenses for which he was being tried, and the 1985 assault incidents involving Shirley Sutton and Wesley Hall were not only remote in time but were factually dissimilar from the present case. Neither the prosecution nor the trial court suggested any grounds on which the evidence objected to might be relevant to the present charges. The State argues that the fact that a blackout prevented defendant from accurately remembering the details of the 1985 shooting might indicate an inability to remember details of the incident resulting in his current charges. Because nothing in the record suggests defendant was in a blackout during the latter incident or that he has other memory problems, we find that argument unpersuasive.

[5]  Finally, the State also argues it may elicit evidence on cross-examination that would be otherwise incompetent or irrelevant in order to rebut or explain evidence offered by the defendant. *State v. Garner*, 330 N.C. at 290, 410 S.E.2d at 80. Such cross-examination is permissible, however, not to expose an entirely new line of inquiry otherwise impermissible under the Rules, but only to correct inaccuracies or misleading omissions in the defendant's testimony or to dispel favorable inferences arising therefrom. For example, when the defendant "opens the door" by misstating his criminal record or the facts of the crimes or actions, or when he has used his criminal record to create an inference favorable to himself, the prosecutor is free to cross-examine him about details of those prior crimes or actions. *See, e.g., State v. Darden*, 323 N.C. 356, 372 S.E.2d 539 (1988); *State v. Brown*, 310 N.C. 563, 313 S.E.2d 585 (1984).

In this case, however, defendant's brief summary of his criminal record was accurate and complete, and he did not use it to create inferences favorable to himself. Instead, his testimony raised unfavorable inferences: that he lied in his initial statement to police, that he was a drug user, that he routinely carried a pistol, and that he had numerous prior convictions. Such accurate yet unfavorable testimony did not open the door to further damaging questions about the details of his prior crimes.

The only purpose served by eliciting the details of the prior convictions here was to create for jurors an image of defendant as a person with a bad character who was inclined to commit crimes and who, as a man who carried weapons and had a propensity for engaging in violent crimes without justification, probably had no justification for the shootings in this case. This is precisely the inference, logically unrelated to the offenses for which defendant was on trial, that the *Finch* rule prohibits.

[6]  In summary, the trial court erred in allowing cross-examination of defendant about details of his prior convictions in that: (1) such inquiry exceeded the scope allowable for impeachment purposes under Rule 609(a); (2) it was not authorized by Rule 404(a) because defendant did not put his character into evidence; (3) it bore no logical relevance to the crimes charged that would render it admissible under Rule 404(b), and (4) it was not admissible to refute any inaccurate or misleading testimony or inferences raised by defendant. Defendant's defense was that he was subjected to a violent and unprovoked physical assault under circumstances which made him fear that his life was endangered by both of the victims. Testimony pertinent to his self-defense claim was conflicting. The jurors may well have found defendant's claim of self-defense less persuasive, or may have been more inclined to view defendant as more culpable, as a result of the detailed evidence tending to show that he was naturally prone to violence and had committed other unjustified assaults. Because defendant's defense was self-defense, we cannot conclude that the error was harmless. *See* N.C.G.S. § 15A-1443(a) (1988). Accordingly, defendant is entitled to a new trial.

In view of this disposition and of the improbability that other errors asserted will recur at defendant's new trial, we need not address defendant's remaining assignments of error.

NEW TRIAL.