STATE OF NORTH CAROLINA v. DONALD STANFIELD AND PERNELL JAMES HAM

No. 65

(Filed 14 April 1977)

1. Criminal Law § 88.1— scope of cross-examination

Cross-examination is not confined to the subject matter covered on direct examination but ordinarily may extend to any matter relevant to the issues in the case; however, this does not mean that all decisions on cross-examination are left to the cross-examiner, since the trial judge may and should rule out immaterial, irrelevant and incompetent matter.

State v. Stanfield

2. Criminal Law § 169.6— refusal to have answer placed in record

The trial judge's refusal to have an answer placed in the record will not be held error where both the question and the answer are immaterial.

3. Criminal Law § 88.3— cross-examination — refusal to require immaterial answer

The trial court in a homicide case did not infringe on defendant's right to cross-examine a State's witness by refusing to require the witness to answer specifically a question as to where he obtained marijuana which he smoked where the witness stated that his source of marijuana was not connected with this case, and so no specific answer that he might have given would have been material.

4. Criminal Law § 35— evidence crime not committed by another — opening door by cross-examination

Where defense counsel on cross-examination of a witness brought out evidence tending to show that someone else had been suspected of committing the crime charged, the State was entitled to introduce evidence that the earlier suspects could not have committed the offense for the purpose of explaining or rebutting the testimony elicited by defense counsel, even though such evidence would have been irrelevant had it been offered initially by the State.

5. Criminal Law § 89.8— accomplice — absence of threats or promises

An accomplice may testify that he has received neither promises nor threats for his testimony even though his credibility has not yet been impugned.

6. Criminal Law § 34— evidence of another crime — competency to show possession of gun

In a murder prosecution in which the State's evidence tended to show that the victim was killed with a shotgun owned by one defendant, evidence that such defendant assaulted his landlord's son with a shotgun less than a month before the murder was properly admitted for the limited purpose of showing possession by such defendant of a shotgun shortly before the murder.

7. Criminal Law § 77.1— "effect" of conversation — competency as admission

Testimony of the "effect" of a conversation between the witness and defendants several days after a murder concerning disposition of the murder weapon was competent as an admission by defendants, although the witness did not remember the exact words spoken.

8. Criminal Law § 102.8— jury argument — failure to show whereabouts at time of crime

In a murder prosecution in which the State's evidence tended to show that the crime occurred at about 6:00 p.m. and defendant offered evidence of his whereabouts at 4:30 p.m. and again at 6:45 p.m. on the day of the crime, the prosecutor's argument that defendant did not show where he was between 4:30 and 6:45 p.m. because he was where a State's witness said he was did not constitute a comment on

State v. Stanfield

defendant's failure to testify but was directed solely at defendant's failure to offer evidence rebutting the State's case.

**9. Homicide § 31— substitution of life sentences for death penalties**

Sentences of life imprisonment are substituted for death penalties imposed for first degree murder.

DEFENDANTS appeal pursuant to G.S. 7A-27(a) from judgment of *Webb, J.,* entered at the 11 November 1975 Criminal Session of ONSLOW Superior Court. This case was docketed and argued as No. 55, Fall Term 1976.

On indictments, proper in form, defendants were charged with the murder of Scott Webber. Their cases were consolidated for trial. The jury returned a verdict of guilty of murder in the first degree as to each defendant, and each received the death sentence.

· The evidence for the State tended to show that in July 1975 Scott Webber was a Marine Sergeant living on Highway 17 South, near Jacksonville. At noon on July 7, Webber was seen alive at his apartment. That night at 8 p.m., he was not at home. Between 9:00 and 9:30 p.m. the same night, Webber's van was observed parked along Highway 210 near a bridge at West Onslow Beach, some twenty-six miles from Jacksonville. The next morning, Webber still had not returned to his apartment. His associates, including defendant Stanfield, looked for him and in the course of their search examined the van.

On 9 July 1975, employees of the North Carolina Department of Transportation, engaged in road construction in the West Onslow Beach area, went to eat their lunches at an abandoned hunting lodge located about a quarter of a mile off Highway 210 near a bridge. In the bathroom of this abandoned hunting lodge they found a body, which had not been present there two days earlier. The body was identified as that of Scott Webber. Medical testimony indicated Webber died from a gunshot wound to the back of the head. From this wound a part of a slug and plastic wadding were removed.

At some time prior to his death, Scott Webber, Phillip Tatta, and defendant Stanfield, all members of the United States Marine Corps, planted a marijuana field at West Onslow Beach to raise "grass" for sale. They set out over 2,000 plants and expected to make around $20,000 on the crop. After the marijuana grew large enough to pick, defendant Stanfield

became angry because Webber was not doing his share of the work, was telling other people about the "pot" field, and had taken an outsider with him to the private field.

In the latter part of June 1975, defendant Stanfield asked Roger Olive, also a member of the United States Marine Corps, and defendant Ham, who apparently had formerly been in the Marine Corps, to get rid of Webber and promised them all the "pot" they could smoke. About 5:30 p.m. on July 7, defendant Ham and Olive went to the abandoned hunting lodge near West Onslow Beach. They had been in the area earlier the same day and located the lodge. On the second trip to the lodge defendant Ham carried a shotgun, which he and defendant Stanfield had purchased earlier. Ham and Olive entered the abandoned hunting lodge after hiding Ham's car so Webber could not see it as he approached the lodge. Defendant Ham stood inside next to a window, apparently watching the road for the approach of Webber and defendant Stanfield.

Sometime later, Scott Webber and defendant Stanfield arrived at the abandoned hunting lodge in a Volkswagen automobile. After Webber and Stanfield entered the front room, Stanfield went directly to the bathroom. Defendant Ham then went into the bedroom and returned with the shotgun. He ordered Webber to get into the bathroom. Webber asked Stanfield what was going on. Stanfield did not reply but instead exited from the bathroom into the bedroom where Olive was located and closed the door.

Shortly thereafter Olive heard a shot and something hit the floor. Olive and defendant Stanfield came from the bedroom and went into the front room when they observed defendant Ham leaving the bathroom with a shotgun in his hand. The three left the lodge but returned almost immediately to get Webber's keys and wallet. Defendant Ham and Olive left the lodge for the last time between 6:00 and 6:30 p.m. They moved Webber's white van, which had been parked along Highway 210, across the bridge. Defendant Stanfield was still at the lodge when they departed.

Substantial circumstantial evidence tended to corroborate the above events as testified to by Olive.

Defendant Stanfield's evidence tended to show that on 7 July 1975 he worked a normal day in the Marine Corps, getting

State v. Stanfield

off at 4:30 p.m. At about a quarter to seven he arrived at his scuba diving school in Jacksonville. Other evidence tended to show that defendant Stanfield was a person of good character and that Roger Olive was a person of bad character.

Defendant Ham offered no evidence.

Other facts necessary to the decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Associate Attorney, George J. Oliver for the State.*

*Roger W. Smith for defendant Stanfield.*

*Joseph C. Olschner for defendant Ham.*

COPELAND, Justice.

[1]   Defendants first contend the court erred by permitting a witness to refuse to answer a question on cross-examination.

The State called as a witness, Ted Purpero, a Marine Corporal who testified that he first became acquainted with defendant Stanfield in May 1975, when Stanfield moved into the same residence. Purpero testified that on 7 July 1975, defendant Stanfield did not arrive home until 9:00 or 9:30 p.m. At the time, he "stormed into the house and said someone stripped his field and someone it going to pay for it." Witness Purpero admitted on cross-examination that he knew about the marijuana field and knew that defendant Stanfield had brought marijuana to the house. However, he denied smoking any of Stanfield's marijuana.

On cross-examination Purpero was asked, "Where did you get the marijuana?" He replied, "It doesn't have anything to do with anybody in this [case]." An objection by the State followed and was sustained by the court. Upon defendants' request that the witness place his answer to the question in the record, the witness whispered to the court reporter "Nobody that had anything to do with this case." The trial court refused to require the witness to give a more specific response. The next morning when defense counsel continued to cross-examine the witness he obtained the same answer to his question and the State's objection was again sustained. Defendants contend the ruling of the trial court infringed on their right to cross-examine the State's witness.

State v. Stanfield

[1]  Cross-examination is not confined to the subject matter covered on direct examination but ordinarily may extend to any matter *relevant* to the issues in the case. *State v. Waddell,* 289 N.C. 19, 220 S.E. 2d 293 (1975) ; *State v. Huskins,* 209 N.C. 727, 184 S.E. 480 (1936) ; *State v. Allen,* 107 N.C. 805, 11 S.E. 1016 (1890) ; 1 Stansbury's N. C. Evidence, § 35 at 105, 107 (Brandis Rev. 1973). However, "wide open" cross-examination does not mean that all decisions on cross-examination are left to the cross-examiner. The trial judge may and should rule out immaterial, irrelevant and incompetent matter. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971) ; *State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50 (1970) ; 1 Stansbury's N. C. Evidence, § 35 at 108 (Brandis Rev. 1973). The legitimate bounds of cross-examination are largely within the discretion of the trial judge. *State v. Robinson,* 280 N.C. 718, 187 S.E. 2d 20 (1972) ; *State v. Chance,* 279 N.C. 643, 185 S.E. 2d 227 (1971) ; *State v. McPherson, supra.*

[2]  "Ordinarily, this Court does not approve the refusal of the trial court to permit counsel to insert in the record the answer to a question to which objection has been sustained." *State v. McPherson, supra* at 487, 172 S.E. 2d at 53. But in certain instances where both the question and the answer are immaterial, the trial judge's refusal to have an answer placed in the record will not be held error. *State v. McPherson, supra.*

[3]  The witness, Purpero, denied smoking any of defendant Stanfield's marijuana, but admitted he had smoked marijuana "once in awhile." Obviously, it was immaterial where Purpero obtained his marijuana unless, as defendants argue, he was involved with someone in the case that would tend to create bias or interest on his part. Since the witness adamantly contended that his marijuana source was completely unrelated to this case, we cannot see how any answer he might have given could possibly be material. The trial judge properly exercised his discretion in not requiring the witness to specifically answer the question.

Assuming *arguendo* that the court should have required the witness to answer, the error would not necessarily entitle defendants to a new trial. The burden is on appellants, not only to show error, but to show *prejudicial* error. *State v. Robinson, supra; see State v. Asbury,* 291 N.C. 164, 229 S.E. 2d 175 (1976). Witness Purpero admitted several times on cross-

examination that he disliked defendant Stanfield. At one point he testified "I did not like him. I don't like him any better now than I did then. The time he stayed there hardly a civil word passed between the two of us." Defense counsel could not have hoped to have shown a more biased witness than Purpero appeared to be. In view of this witness' bias, we do not feel defendants were prejudiced by the exclusion of other evidence merely cumulative in nature. The assignment of error is overruled.

Under several assignments of error defendants claim the court erred in permitting the State to show that other people were not responsible for the death of the deceased.

The record discloses that the investigating officer first charged and arrested two other suspects with the murder of Scott Webber but later releasesd them when the district court found no probable cause for their arrest.

Defendants maintain that *State v. England,* 78 N.C. 552 (1878), is controlling and that it requires a new trial. In that case the defendant was charged with burning a stable. From the State's evidence it appeared the defendant's brother had first been suspected and arrested for the offense, but that measurements of tracks near the scene compared unfavorably with the brother's foot. Introduction of this evidence was held error because it "had no legal tendency to establish the guilt of the prisoner, *though it was evidently introduced and used for that purpose." State v. England, supra* at 554 (emphasis supplied). Lacking probative value, the evidence was irrelevant and inadmissible. Nothing else appearing, *England* would be controlling in the instant case.

In the present case the State offered the testimony of the investigating officer. During *cross-examination,* the officer testified that he had issued and served a warrant on 16 August 1975 charging two other people with the murder of Scott Webber. The officer stated that, at the time, the facts were consistent with their guilt, and for that reason, he signed the arrest warrant. The officer admitted these cases were later dismissed and that he had to begin his investigation anew.

Obviously defense counsel by delving into this subject was attempting to show that the sheriff's department was engaged in a witch hunt and had previously charged innocent people with the crime. The jurors might then infer that the State had

a weak case against these defendants and that the offense could have been committed by someone else. It was only after this cross-examination that the State proceeded to show through the testimony of additional witnesses that the earlier suspects could not possibly have committed the offense charged. It appeared that when the earlier suspects' alibi was positively confirmed, the investigating officer recommended their release, which was subsequently granted by the court.

[4] We hold that where defense counsel on cross-examination of a witness brings out evidence tending to show that someone else was suspected of comitting the crime charged, the State is entitled to introduce evidence in explanation or rebuttal thereof, even though such evidence would have been irrelevant had it been offered initially by the State. In such a case, the defendant has "opened the door" to this testimony and will not be heard to complain. *Highfill v. Parrish,* 247 N.C. 389, 100 S.E. 2d 840 (1957) ; *State v. Black,* 230 N.C. 448, 53 S.E. 2d 443 (1949). "Upon the examination in chief, the evidence may not be competent, but the cross-examination may make it so." *State v. Patterson,* 284 N.C. 190, 196, 200 S.E. 2d 16, 20 (1973).

*State v. England* is distinguishable because in that case the State introduced evidence tending to show that a person other than the defendant could not have committed the crime charged, *not* in explanation or rebuttal of testimony elicited by defense counsel, but rather as part of its case in chief. Under the circumstances of the present case, the State had a right to explain the evidence brought out on cross-examination by defense counsel and to rebut any negative inferences arising therefrom. This assignment of error is overruled.

[5] Richard Olive, an admitted accomplice, was permitted to say on direct examination that his testimony was not motivated by promises or threats. Under defendants' next assignment of error they assert that an accomplice may not testify that he has received neither promises or threats for his testimony before his credibility has been impugned. Defendants concede this evidence is relevant to the credibility of the witness but contend that self-serving statements on the part of a witness are not permissible.

Even without cross-examination, the testimony of an *accomplice,* when offered by the State, is subject to careful scrutiny because an accomplice is generally regarded as interested

in the event. *State v. Hale,* 231 N.C. 412, 57 S.E. 2d 322 (1950) ; *State v. Roberson,* 215 N.C. 784, 3 S.E. 2d 277 (1939). It is common knowledge that accomplices often testify as a result of threats of prosecution or promises of immunity. Thus, we see nothing wrong with an accomplice testifying that he has received neither threats nor promises for his testimony in order to forestall such a contention on the part of the defendant. *State v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871 (1951).

This assignment lacks merit and is overruled.

[6]   Under two assignments of error, defendants claim the court committed error by permitting the State to introduce evidence of an unrelated incident of misconduct on the part of defendant Ham.

The State offered evidence tending to show that defendant Ham had been evicted from a mobile home for nonpayment of rent in late June or early July 1975. His possessions were removed by the landlord's son and placed in a nearby trailer. Defendant Ham appeared on the scene and threatened the boy with a shotgun until his possessions were returned to the mobile home.

Defendants maintain this evidence is irrelevant and thus inadmissible. Furthermore, they claim it is inadmissible under the general rule prohibiting the State from introducing over defendant's objection evidence that the accused has committed another separate and independent criminal offense—in this case, assault with a firearm. *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969) ; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954).

In the instant case, substantial evidence tended to show that the deceased was murdered with a shotgun owned by defendant Ham. The challenged evidence tends to show that defendant Ham exhibited a shotgun less than a month before the murder. The State contends that this incident was not introduced to show the commission of another crime, but solely to show possession by defendant Ham of a shotgun shortly before Webber's death.

Immediately following introduction of this evidence, defendant Ham moved to strike. The court then instructed the jury as follows:

> "Ladies and gentlemen, I will tell you you can consider the fact Pernell Ham had a shotgun in his possession, but it is irrelevant to this case, as to the testimony of the witness telling him to put the stuff back in the trailer. So do not consider that at all in your deliberations in this case."

Thus, the court excluded this evidence from the jury's consideration except as it tended to show possession by defendant Ham of a shotgun. We believe the evidence was relevant for this limited purpose. We may assume the jury complied with the judge's instructions and that any prejudicial effect was thus removed. *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966). The assignment of error is overruled.

[7] Defendants next complain the court erred in permitting a witness for the State to testify to the "effect" of a conversation, after the witness had testified that he did not remember exactly what was said.

This conversation between the defendants and witness Olive occurred several days after the murder of Webber and involved disposition of the murder weapon. Olive testified that he could remember the subject of the conversation although he could not remember the exact words. He definitely recalled that the conversation concerned the shotgun and that defendant Stanfield wanted defendant Ham to get rid of it.

This conversation qualifies as an admission by the defendants, and as such, is competent evidence. *State v. Edwards,* 286 N.C. 140, 209 S.E. 2d 789 (1974); *State v. Woolard,* 260 N.C. 133, 132 S.E. 2d 364 (1963); 2 Stansbury's N. C. Evidence, § 167 (Brandis Rev. 1973). We know of no rule that requires the witness to remember the exact words spoken. This is not a case of a witness speculating or guessing as to the substance of a conversation. The assignment of error is without merit and overruled.

[8] Defendants assign as error the district attorney's final argument, claiming he improperly commented on their failure to testify. Neither defendant testified in his own behalf, but defendant Stanfield offered evidence of his whereabouts on 7

July. This testimony tended to show that Stanfield went off duty at the Marine base at 4:30 p.m. and arrived at the scuba diving school at 6:45 p.m.

The district attorney argued there was no evidence before the jury explaining defendant Stanfield's whereabouts between 4:30 and 6:45 p.m. He said: "Where was this defendant between four thirty and quarter to seven. He has put on evidence, has he showed you, ladies and gentlemen, where he was between four thirty and quarter to seven. *You ask him, has he showed you that.*" Defendants excepted. Whereupon, the court instructed the jury not to consider the italicized portion of the prosecutor's remarks and advised the prosecutor that his argument was improper, thus curing any error. *State v. Covington, supra; State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897 (1970).

The district attorney continued: "Ladies and gentlemen, he has told you where he was at four thirty; he had told you where he was at quarter to seven, he has offered evidence as to where he was at that time; why do you think he has not offered evidence to you as to where he was between four thirty and quarter to seven, why do you think he has not offered evidence to show you where he was at this time . . . " Again there was objection by counsel for the defendants and a motion for a mistrial. The court overruled both motions.

Finally the district attorney said: "Ladies and gentlemen, you keep that in mind in your deliberations when you try to determine whether or not this defendant, Stanfield, is guilty or not guilty. I submit that you have not been shown where he was because he was right where Roger Olive said he was."

Defendants contend these arguments of the district attorney infringed their right to remain silent under the United States and North Carolina Constitutions and G.S. 8-54.

We have consistently held that " '[W]hile defendant's failure to testify is not the subject of comment or consideration, the jury in weighing the credibility of the evidence offered by the State may consider the fact that it is uncontradicted . . . or unrebutted by evidence available to defendant.' *State v. Bryant,* 236 N.C. 745, 747, 73 S.E. 2d 791, 792 (1953); . . . " *State v. Tilley,* 292 N.C. 132, 143, 232 S.E. 2d 433, 441 (1977).

According to the State's evidence, the murder allegedly took place at around 6:00 p.m. at a lodge some twenty-six miles from

Jacksonville. The facts as to defendant Stanfield's whereabouts during this particular time period are critical. Certainly, the district attorney had a right to comment on defendant Stanfield's failure to account for the hours between 4:30 and 6:45 p.m., especially after the defendant had offered evidence tending to establish an alibi. The prosecutor's remarks were directed solely at defendant Stanfield's failure to offer evidence rebutting the State's case, rather than at his failure to take the stand.

The assignment of error is without merit and overruled.

Defendants assign as error the court's instructions to the jury. Defendants maintain the court commented on the sufficiency of the evidence to establish intent to kill, deliberation, and alibi in violation of G.S. 1-180.

We have reviewed the judge's instructions in their entirety and find that the court's statements concerning the sufficiency of the evidence were expressed as contentions of the State and do not represent the court's opinion. The judge's charge must be read *contextually* and when this is done, we find the charge free from error. *State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548 (1966); *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334, *cert. denied,* 377 U.S. 978, 12 L.Ed. 2d 747, 84 S.Ct. 1884 (1964).

These assignments of error are without merit and overruled.

[9] Defendants last assignments of error attacks the imposition of the death penalty. In *Woodson v. North Carolina,* _____ U.S. _____, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975) under which defendants were indicted, convicted, and sentenced to death. By authority of the provisions of 1973 Sess. Laws, c. 1201, § 7 (1974 Session), sentences of life imprisonment are substituted for the death penalty in these cases. We, therefore, deem it unnecessary to discuss further this assignment of error.

These cases are remanded to the Superior Court of Onslow County with directions (1) that the presiding judge, without requiring the presence of defendants, enter judgments imposing life imprisonment for the first-degree murder of which defendants have been convicted; and (2) that, in accordance with these judgments, the clerk of superior court issue commitments

in substitution for the commitments heretofore issued. It is further ordered that the clerk furnish to the defendants and their attorneys copies of the judgments and commitments as revised in accordance with this opinion.

We have also examined defendants' Assignment of Error No. 31 and find no merit in it. Due to the serious nature of the crime for which defendants have been convicted, we have searched the record for errors other than those assigned and have found none prejudicial to the defendants.

In the trial we find

No error.

Death sentences vacated and, in lieu thereof, life sentences imposed.