STATE OF NORTH CAROLINA v. JOE CEPHUS JOHNSTON, JR.

No. 200A89-2

(Filed 11 October 1996)

**1. Homicide § 558 (NCI4th)— first-degree murder—no instruction on voluntary manslaughter—no error**

**Am Jur 2d, Homicide §§ 56-69.**

STATE v. JOHNSTON

[344 N.C. 596 (1996)]

Propriety of manslaughter conviction in prosecution for murder, absent proof of necessary elements of manslaughter. **19 ALR4th 861.**

2. **Evidence and Witnesses § 1694 (NCI4th)— first-degree murder—photographs of victim—introduced to illustrate pathologist's testimony—used in cross-examination of defendant**

The trial court did not err in a capital first-degree murder prosecution which resulted in a life sentence by permitting the prosecutor to use photographs of the victim to cross-examine defendant where the photographs had been admitted into evidence and published to the jury to illustrate the testimony of the pathologist and various other State's witnesses; the prosecutor asked defendant a limited number of questions requiring defendant to examine the photographs; and the photographs were not republished to the jury at that time. The manner in which the photographs were used to cross-examine defendant was not aimed solely at arousing the passions of the jury and did not result in any unfair prejudice.

Am Jur 2d, Evidence §§ 963, 964.

Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. **73 ALR2d 769.**

Necessity and effect, in homicide prosecution, of expert medical testimony as to cause of death. **65 ALR3d 283.**

Evidence offered by defendant at federal criminal trial as inadmissible, under Rule 403 of Federal Rules of Evidence, on ground that probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury. **76 ALR Fed. 700.**

3. **Evidence and Witnesses § 728 (NCI4th)— murder—defendant's use of knife to skin deer—testimony not prejudicial error**

There was no prejudicial error in a capital first-degree murder prosecution (with a life sentence) where the victim had been stabbed where the court permitted testimony describing defendant's use of a knife to skin a deer. Assuming that the detailed description of the deer-cleaning process was not relevant, the

error was harmless because the evidence of defendant's guilt was overwhelming. Defendant has not shown that a different result would have been reached had the witness not been permitted to describe defendant's use of his knife to skin a deer.

**Am Jur 2d, Evidence §§ 347, 348; Witnesses § 625.**

4. **Evidence and Witnesses § 264 (NCI4th)— murder—testimony as to victim not carrying weapon—admissible**

There was no prejudicial error in a capital prosecution for first-degree murder which resulted in a life sentence where the State introduced evidence of the victim's character for peacefulness before his character was put in issue. A witness who was with the victim at the time of the stabbing testified on direct examination that she had never known the victim to carry any type of weapon and that to her knowledge the victim was not carrying a weapon on the night of his murder. Testimony that the victim was unarmed and that a defendant continued to inflict deadly wounds on an unarmed victim, even after he is rendered helpless, is relevant to premeditation and peripheral questioning about whether the victim carried a weapon in the past was not prejudicial. Moreover, the evidence of defendant's guilt was overwhelming and defendant cannot show that there is a reasonable possibility that the outcome of the trial would have been different if the court had prohibited the testimony.

**Am Jur 2d, Evidence § 373; Homicide § 308.**

**Right of prosecution, in homicide case, to introduce evidence in rebuttal to show good, quiet, and peaceable character of deceased. 34 ALR2d 451.**

5. **Evidence and Witnesses § 2750.1 (NCI4th)— murder— cross-examination—suggestion of facts with questions— door opened**

There was no prejudicial error in a capital prosecution for first-degree murder which resulted in a life sentence where defense counsel asked the victim's girlfriend whether the victim was under the influence of alcohol the night of the murder, whether the victim was aggressive, and whether she and the victim were wanting to fight that night, and the prosecutor asked on redirect whether the witness and the victim had ever been in a fight with anybody else or if the victim had ever been in a fight in her presence. Defense counsel cross-examined the witness in a

STATE v. JOHNSTON

[344 N.C. 596 (1996)]

manner suggesting that the victim was looking for a fight on the night of his murder; defendant having opened the door, the State was entitled to introduce rebuttal evidence. Regardless, the evidence of defendant's guilt was overwhelming and defendant cannot show prejudice.

**Am Jur 2d, Evidence §§ 383, 388, 431; Homicide § 299.**

**Prejudicial effect of prosecutor's comment on character or reputation of accused, where accused has presented character witnesses. 70 ALR2d 559.**

**Cross-examination of character witness for accused with reference to particular acts or crimes—modern state rules. 13 ALR4th 796.**

6. **Evidence and Witnesses §§ 788, 2913 (NCI4th)— murder— testimony as to victim's aggression excluded—other evidence**

The trial court in a capital prosecution for first-degree murder which resulted in a life sentence did not err by not allowing defendant to elicit testimony from the victim's companion that the victim was in an aggressive posture the night he was murdered. The question objected to by the State had already been asked and answered and evidence to the same effect came in through another witness.

**Am Jur 2d, Evidence § 356; Trial § 1472.**

7. **Evidence and Witnesses § 2750.1 (NCI4th)— murder— cross-examination—inference—door opened**

There was no error in a capital prosecution for first-degree murder which resulted in a life sentence where the defense brought out on cross-examination of the pathologist who performed the autopsy on the victim that the pathologist had performed only three or four autopsies involving stab wounds at the time he did this autopsy and that he had consulted with two of his colleagues; the prosecutor had asked on redirect which colleagues had been consulted; and the pathologist identified his colleagues and further stated that they had concurred with his opinions. Defendant opened the door by creating an inference on cross-examination that the pathologist lacked expertise, had little confidence in his findings, and sought help from his colleagues.

**Am Jur 2d, Trial § 564.**

STATE v. JOHNSTON

[344 N.C. 596 (1996)]

Necessity and effect, in homicide prosecution, of expert medical testimony as to cause of death. 65 ALR3d 283.

Cross-examining expert witness regarding his status as professional witness. 39 ALR4th 742.

8. **Evidence and Witnesses § 2051 (NCI4th)— murder—testimony of victim's companion—no time to leave as defendant approached—instantaneous conclusion of mind**

The trial court did not err in a capital prosecution for first-degree murder which resulted in a life sentence by allowing the victim's girlfriend to testify with respect to the victim's options in leaving the scene and with respect to defendant's intent at that time. The witness's testimony that defendant was "going to do something" and that they did not have time to leave before defendant approached represented an instantaneous conclusion based on her observation of a variety of facts; as such, the testimony may be characterized as a "shorthand statement of fact."

Am Jur 2d, Evidence § 558; Homicide § 163.

9. **Jury § 131 (NCI4th)— murder—jury selection—possibility of hostile witnesses**

The trial court did not abuse its discretion in a capital prosecution for first-degree murder which resulted in a life sentence by permitting the prosecutor to ask prospective jurors if they understood that the State might call family members and associates of defendant as "hostile" witnesses. Defendant objected to these questions primarily on the basis that only the trial court has the discretion to declare a witness hostile, but the prosecutor's statements that family and associates of defendant might be called as hostile witnesses did not suggest that testimony of these witnesses should be considered more carefully than other witnesses or that testimony by these witnesses unfavorable could be discarded. Defendant failed to show abuse of discretion or prejudice.

Am Jur 2d, Judges § 171.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Herring, J., at the 11 July 1994 Criminal Session of Superior Court, Halifax County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 16 May 1996.

*Michael F. Easley, Attorney General, by Jill Ledford Cheek, Assistant Attorney General, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

PARKER, Justice.

At defendant's first trial on an indictment charging him with the murder of Ralph Reese Bryant, defendant and codefendant Morris Wayne Johnson were found guilty of first-degree murder; and the trial court entered judgments sentencing defendant to death and Johnson to life imprisonment. This Court vacated the verdicts and judgments and remanded both defendant's case and Johnson's case for new trial. *State v. Johnston*, 331 N.C. 680, 417 S.E.2d 228 (1992). On remand defendant was tried separately and capitally on the indictment charging him with the victim's murder. The jury returned a verdict finding defendant guilty of first-degree murder. During a capital sentencing proceeding, the jury was unable to unanimously agree as to its sentencing recommendation; and the trial court imposed a mandatory sentence of life imprisonment. For the reasons discussed herein, we conclude that defendant's trial was free of prejudicial error and uphold his conviction and sentence.

At trial the State's evidence tended to show that on 20 February 1988, Jackie Jamerson (now Jackie Cutchin), Cindy Davis (now Cindy Griffin), and Bryant went to a nightclub in Roanoke Rapids, North Carolina. As Cutchin, Griffin, and Bryant left the nightclub, a group of people, including defendant, began making comments to Cutchin and Griffin. Cutchin and Griffin got into the car. Charlie Johnston brushed up against Bryant as Bryant was getting into the car, and the two exchanged words. Johnston then walked to a nearby hill where he joined defendant and his friends. One of the men in the group challenged Bryant to come across a fence located on the hill and fight. Bryant took off his boots and jumped to the other side of the fence, but no one in defendant's group approached him. Griffin got out of the car and suggested to Bryant that they leave, and Griffin and Bryant went back to the car.

As Bryant and the women drove away, Michael Ennis Smith, Jr. began chasing their car. Bryant stopped the car, caught Smith, and knocked him onto the pavement. Bryant told Smith that he wanted Smith's group to leave Bryant and the two women alone. After Bryant let Smith get up, Smith went back and joined his friends.

Defendant and approximately fifteen men then walked down the hill in Bryant's direction. Defendant said to Bryant, "If you want to f--- with somebody, you f--- with me." A fight ensued involving primarily Bryant, defendant, and Morris Johnson. Defendant pulled a knife from his pocket and began stabbing Bryant. Johnson also pulled something out of his pocket and began to strike Bryant in the back. Someone yelled "he's been hurt bad," and everyone scattered. Bryant was fatally wounded during the course of the altercation.

Phillip Lee Ricks, Jr., an emergency medical technician, responded to an emergency call from the Roanoke Rapids Police Department during the early morning hours of 21 February 1988. When Ricks arrived at the crime scene, the victim showed no signs of life. Ricks testified that he found a box cutter about ten or twelve feet from the victim's body. A fingerprint on the box cutter was later identified as belonging to Morris Johnson.

Pathologist Robert Patrick Dorion performed an autopsy on the body of the victim. Dr. Dorion testified that there were twenty-four different wounds on the victim's body, which cumulatively caused the victim's death. Dr. Dorion could not say which of the two weapons, the knife or the box cutter, caused the majority of the victim's wounds. Dr. Dorion did specifically opine that one of the lethal wounds was consistent with a wound which would have been inflicted by a knife, rather than a box cutter.

Defendant testified on his own behalf. Defendant stated that after leaving the nightclub the morning of 21 February, he saw Bryant fighting with Morris Johnson. Defendant testified that he reached down to pull Bryant off Johnson and Bryant spun around and kicked him in the head. Defendant claimed that Bryant's actions stunned him and that he "just lost it" and started fighting. Defendant stated that he never intended to do anything but break up the fight and that he did not recall taking his knife out of his pocket.

[1] In his first assignment of error, defendant contends that the trial court erred by refusing to instruct the jury on voluntary manslaughter. The record in this case shows that the trial court instructed the jury that it could find defendant (i) guilty of first-degree murder on the basis of premeditation and deliberation, (ii) guilty of second-degree murder, or (iii) not guilty. The jury having returned a verdict finding defendant guilty of murder in the first degree, any error in failing to instruct the jury on voluntary manslaughter could not have

prejudiced defendant. *State v. Leach*, 340 N.C. 236, 239-40, 456 S.E.2d 785, 787-88 (1995). This assignment of error is overruled.

**[2]** In his next assignment of error, defendant contends that the trial court erred by permitting the prosecutor to use photographs of the victim to cross-examine defendant. During cross-examination of defendant, the prosecutor showed defendant two photographs of the deceased victim at the scene and asked defendant whether he recognized the victim. The trial court overruled defendant's objection, and defendant stated that he did not recognize the victim. The prosecutor then showed defendant five autopsy photographs and asked defendant to "[p]oint out what, if any, wounds on the body of that person that you inflicted." Over objection defendant responded that he did not know whether he inflicted any of the wounds depicted in the photographs. Defendant argues that the prosecutor's use of the photographs during his cross-examination was inflammatory, unfairly prejudicial, and in violation of the Rules of Evidence.

"Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). The photographs used by the prosecutor to cross-examine defendant had been admitted into evidence and published to the jury to illustrate the testimony of the pathologist and various other State's witnesses. During cross-examination the prosecutor asked defendant a limited number of questions requiring defendant to examine the photographs, and the photographs were not republished to the jury at that time. We conclude that the manner in which the photographs were used to cross-examine defendant was not aimed solely at arousing the passions of the jury and did not result in any unfair prejudice to defendant. This assignment of error is overruled.

**[3]** In his next assignment of error, defendant contends that the trial court erred by permitting testimony describing defendant's use of a knife to skin a deer. Defendant argues that this testimony was irrelevant and that any probative value was substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evi-

dence." N.C.G.S. § 8C-1, Rule 401 (1992). Generally, all relevant evidence is admissible. N.C.G.S. § 8C-1, Rule 402 (1992). This Court has consistently stated that "in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Collins*, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994).

Relevant evidence may, however, be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992). "Whether to exclude relevant but prejudicial evidence under Rule 403 is a matter left to the sound discretion of the trial court." *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992).

At trial Melody Sherrod, defendant's girlfriend, examined a knife which the State had previously introduced into evidence and testified that she had seen defendant wash blood off this knife shortly after the killing. Sherrod further testified that she had seen defendant sharpen the knife and use the knife to "clean deer" prior to the killing. Over defendant's objection Sherrod explained the process of cleaning a deer: "Well, you string—they string the deer up and then you cut it and skin it and then cut the guts out of it and pull the skin off and cut the head off."

Even if we assume *arguendo* that the detailed description of the deer-cleaning process was not relevant, the error in admitting this testimony was harmless. The evidence of defendant's guilt was overwhelming. Eyewitness testimony established that defendant brutally stabbed the victim to death. Defendant has not shown that, had the witness not been permitted to describe defendant's use of his knife to skin a deer, a different result would have been reached at trial. *See* N.C.G.S. § 15A-1443(a) (1988). This assignment of error is overruled.

[4] In defendant's next assignment of error, he contends the trial court erred in allowing the State to introduce evidence of the victim's character for peacefulness, before his character was put in issue, in violation of N.C.G.S. § 8C-1, Rule 404(a). Rule 404(a) prohibits the admission of evidence of a person's character, or a trait of his character, for the purpose of proving conduct in conformity, except in certain limited circumstances. N.C.G.S. § 8C-1, Rule 404(a) (Supp. 1995). Rule 404(a)(2) allows the admission of evidence of a victim's peace-

ful character to rebut defense evidence that the victim was the first aggressor. N.C.G.S. § 8C-1, Rule 404(a)(2). During the direct examination of Jackie Cutchin, Cutchin testified that she had never known the victim to carry any type of weapon and that to her knowledge, the victim was not carrying a weapon on the night of his murder. Defendant contends that this testimony was inadmissible character evidence pursuant to N.C.G.S. § 8C-1, Rule 404(a)(2). Defendant's contention has no merit.

Cutchin's testimony was relevant and admissible to show that the victim was unarmed when he was murdered. Evidence that a victim was peaceful and unarmed at the time of his murder is relevant to prove that the victim did not provoke the defendant and that the murder was committed with premeditation and deliberation. *State v. Alford*, 339 N.C. 562, 453 S.E.2d 512 (1995). Similarly, evidence which shows that a defendant continued to inflict deadly wounds on an unarmed victim, even after he is rendered helpless, is probative to show premeditation and deliberation. *State v. Barbour*, 295 N.C. 66, 243 S.E.2d 380 (1978). Any peripheral questioning about whether the victim carried a weapon in the past was not prejudicial. *See Alford*, 339 N.C. at 569, 453 S.E.2d at 515. Thus, admission of Cutchin's testimony was not error.

[5] During the cross-examination of Cindy Griffin, the victim's girlfriend, defense counsel asked Griffin whether the victim was under the influence of alcohol the night of the murder and whether the victim was aggressive that night. Griffin responded negatively to each question. Defense counsel then asked Griffin whether she and the victim "were wanting to fight that night." Griffin again responded in the negative. On redirect examination the prosecutor asked Griffin, over objection, whether she and the victim had ever been in a fight with anybody else or if the victim had ever been in a fight in her presence. Griffin answered in the negative to these questions as well. Defendant contends that this testimony was also inadmissible character evidence pursuant to N.C.G.S. § 8C-1, Rule 404(a)(2). Again, defendant's contention has no merit.

The State has the right to introduce evidence to rebut or explain evidence elicited by defendant although the evidence would otherwise be incompetent or irrelevant. *State v. Alston*, 341 N.C. 198, 461 S.E.2d 687 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 100 (1996); *State v. Albert*, 303 N.C. 173, 277 S.E.2d 439 (1981). Such evidence is admissible to dispel favorable inferences arising from defendant's

cross-examination of a witness. *Alston*, 341 N.C. 198, 461 S.E.2d 687; *State v. Lynch*, 334 N.C. 402, 432 S.E.2d 349 (1993); *State v. Stanfield*, 292 N.C. 357, 233 S.E.2d 574 (1977). In the instant case defense counsel cross-examined Griffin in a manner suggesting that on the night of his murder, the victim was "looking for a fight." In *State v. McKinnon*, 328 N.C. 668, 403 S.E.2d 474 (1991), this Court stated that although questions by defense counsel do not constitute evidence, they may suggest the fact sought to be propounded. Although Griffin responded on cross-examination that she and the victim were not looking for a fight, defense counsel suggested, through the language of his questions, the facts which he sought to elicit. Defendant having thereby opened the door, the State was entitled to introduce rebuttal evidence. Thus, admission of Griffin's testimony was not error.

Regardless, defendant cannot show that he was prejudiced by the testimony of either Cutchin or Griffin. The evidence of defendant's guilt in the instant case was overwhelming. Defendant cannot show that there is a reasonable possibility that the outcome of his trial would have been different if the trial court had prohibited Cutchin from testifying that she had never seen the victim carrying a weapon or had prohibited Griffin from testifying that the victim had not engaged in a fight during the time she had known him. *See* N.C.G.S. § 15A-1443(a). This assignment of error is overruled.

[6] In defendant's next assignment of error, he contends the trial court erred in not allowing defendant to elicit testimony from Jackie Cutchin that the victim was in an "aggressive posture" the night he was murdered. During the cross-examination of Cutchin, the following occurred:

Q. You said before Mr. Bryant went over the fence, he took his boots off?

A. Yes, sir.

Q. Why did he do that?

[PROSECUTOR]: Objection.

THE COURT: Overruled. If you know, you may answer.

A. I don't know.

Q. Did Mr. Bryant know karate?

A. Yes, I believe he did.

Q. He took his boots off because he was getting ready to fight, was he not?

[PROSECUTOR]: Objection.

THE COURT: Objection sustained.

The question at issue was asked during cross-examination, after Cutchin had testified to the victim's peacefulness. Defendant contends the question was propounded to rebut the State's evidence of the victim's peacefulness and to impeach this particular witness. Defendant further maintains that the fact that later witnesses testified that the victim was indeed in an aggressive posture does not make this alleged error harmless since "the impact did not have the same heft as it would have had [had] it been elicited from [the victim's] friends."

The trial court did not err in sustaining the State's objection to this question. Defense counsel asked Cutchin why defendant took his boots off, and Cutchin stated that she did not know. The question objected to by the State had already been asked and answered.

Furthermore, evidence to the same effect came in through another witness. Defense counsel subsequently introduced testimony suggesting that defendant took off his boots in order to fight. During the cross-examination of Cindy Griffin, the following occurred:

Q. Mr. Bryant took his boots off, didn't he?

A. Yes, Sir.

Q. Why did he take them off?

[PROSECUTOR]: Objection.

THE COURT: Overruled, if you know.

A. He was—he would have fought if somebody had come over to the other side of the fence.

Griffin then testified that the victim knew karate and did not wear his shoes when he practiced karate. This assignment of error is overruled.

[7] In defendant's next assignment of error, he contends the trial court erred in allowing Dr. Robert Patrick Dorion, the pathologist who performed the autopsy on the victim, "to bolster his findings by the hearsay statements of two of his colleagues." Defendant main-

tains that the trial court's action violated the Rules of Evidence, precluded defendant from cross-examining these declarants, and unfairly prejudiced defendant.

During the cross-examination of Dr. Dorion, the defense brought out the fact that Dr. Dorion had performed only three or four autopsies involving stab wounds at the time he did the autopsy in the instant case. The defense also elicited the fact that Dr. Dorion consulted with two of his colleagues before rendering an opinion in this case "[b]ecause of the nature of the case and the multiplicity of wounds." On redirect examination of Dr. Dorion, the prosecutor asked Dr. Dorion which of his colleagues he had consulted. Dr. Dorion stated that he had consulted with Drs. Levy and Zipf, who were also pathologists. Over objection Dr. Dorion further stated that the two doctors had concurred with his opinions in this case. Defendant argues that the fact that the two doctors concurred with Dr. Dorion bolstered the State's argument that one of the most serious wounds inflicted on the victim was inflicted by defendant's knife.

As stated previously this Court permits the introduction of evidence to dispel favorable inferences arising from defendant's cross-examination of a witness. *Alston*, 341 N.C. 198, 461 S.E.2d 687; *Lynch*, 334 N.C. 402, 432 S.E.2d 349; *Stanfield*, 292 N.C. 357, 233 S.E.2d 574. In the instant case the defendant "opened the door" to the introduction of any incompetent or irrelevant hearsay relative to Dr. Dorion's consultation with Drs. Levy and Zipf by creating an inference during Dr. Dorion's cross-examination that he lacked expertise, had little confidence in his findings, and sought help from his colleagues. By questioning Dr. Dorion about his consultation with his colleagues, defendant opened the door to the evidence testified to by Dr. Dorion on his redirect examination. This assignment of error is overruled.

[8] In his next assignment of error, defendant contends that the trial court erred by allowing Cindy Griffin's testimony with respect to the victim's options in leaving the scene and with respect to defendant's intent at that time. Over defendant's objection Griffin testified on redirect examination that (i) the victim would have been crazy to turn his back on the crowd because defendant was "going to do something"; (ii) anyone could tell that defendant was "going to do something"; and (iii) there was no way Griffin, Cutchin, and the victim could have gotten in their car and driven off before defendant

approached them. Defendant argues that this testimony was speculative, beyond Griffin's knowledge, and beyond the lay opinion permitted by N.C.G.S. § 8C-1, Rule 701.

N.C.G.S. § 8C-1, Rule 701 provides:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.G.S. § 8C-1, Rule 701 (1992); *accord State v. Williams*, 319 N.C. 73, 78, 352 S.E.2d 428, 432 (1987). This rule permits evidence which can be characterized as a "shorthand statement of fact."

> This Court has long held that a witness may state the "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time." Such statements are usually referred to as shorthand statements of facts.

*State v. Spaulding*, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975) (quoting *State v. Skeen*, 182 N.C. 844, 845-46, 109 S.E. 71, 72 (1921)), *death sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976); *accord Williams*, 319 N.C. at 78, 352 S.E.2d at 432. Griffin's testimony that defendant was "going to do something" and that they did not have time to leave before defendant approached represented an instantaneous conclusion based on her observation of a variety of facts; and, as such, the testimony may be characterized as a "shorthand statement of fact." This assignment of error is overruled.

[9] In his final assignment of error, defendant contends the trial court erred by permitting the prosecutor to ask prospective jurors if the jurors understood that the State might call family members and associates of defendant as "hostile" witnesses. The following colloquy is an example of the line of inquiry which defendant contends was improper:

> Q. We may call some family members and some associates of this defendant, people that hung out with him. Do you understand what I'm saying.
>
> A. Yes.

STATE v. JOHNSTON

[344 N.C. 596 (1996)]

Q. Do you understand that we may call these people as what's known as hostile witnesses?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

Q. Do you understand we may call some of these people as hostile witnesses? Do you understand?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

A. Yes, sir.

Q. Would you weigh their testimony—family members and associates of this defendant that we may call; would you weigh their testimony carefully?

A. Yes, I would look at the family members. They could say anything, you know. Family likes—a lot of times takes up for these things.

We note that defendant assigned error to more than forty instances in which the prosecutor pursued a substantially similar line of inquiry. Defendant contends that referring to family and associates of defendant as "hostile" witnesses improperly suggested that (i) witnesses who knew defendant were automatically hostile, (ii) the testimony of "hostile" witnesses should be scrutinized more carefully than other witnesses, and (iii) testimony from "hostile" witnesses could be discarded if it was not favorable to the State. Defendant argues that there was no factual basis for suggesting that any witness would be "hostile" and that referring to certain witnesses by that term created "automatic antipathy to and distrust of any friend or family member of the defendant."

"The trial court has the duty to supervise the examination of prospective jurors. Regulation of the manner and the extent of inquiries on *voir dire* rests largely in the trial court's discretion." *State v. Green*, 336 N.C. 142, 164, 443 S.E.2d 14, 27, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547 (1994). "In order for a defendant to show reversible error in the trial court's regulation of jury selection, a defendant must show that the court abused its discretion and that he was prejudiced thereby." *State v. Lee*, 335 N.C. 244, 268, 439 S.E.2d 547, 559, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 162 (1994).

After careful review of the transcript of jury *voir dire,* we conclude that the trial court did not abuse its discretion in permitting the prosecutor to ask prospective jurors whether they understood that he might call family and associates of defendant as "hostile" witnesses. Defendant objected to these questions primarily on the basis that only the trial court has the discretion to declare a witness "hostile." The prosecutor's statements that family and associates of defendant might be called as "hostile" witnesses did not suggest that testimony of these witnesses should be considered more carefully than other witnesses or that testimony by these witnesses unfavorable to the State could be discarded. We conclude that defendant has failed to show abuse of discretion or prejudice in the trial court's rulings on this issue. This assignment of error is overruled.

We conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.