NO. COA13-744

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

STATE OF NORTH CAROLINA

v.                                    Washington County
                                      No. 12 CRS 50089
LOCREAIG DONNELL RUFFIN


Appeal by defendant from judgment entered 29 January 2013 by Judge Benjamin G. Alford in Washington County Superior Court. Heard in the Court of Appeals 8 January 2014.

*Attorney General Roy Cooper, by Special Deputy Attorney General Jennie Wilhelm Hauser, for the State.*

*McCotter Ashton, P.A., by Rudolph A. Ashton, III, and Kirby H. Smith, III, for defendant-appellant.*

STEELMAN, Judge.

Where defense counsel informed the trial court that defendant had decided to reject a plea offer and proceed to trial on a charge of first-degree rape, the trial court's failure to inform defendant of the increased maximum sentence for second-degree rape under N.C. Gen. Stat. § 15A-1340.17(f) was not error. The trial court did not err in allowing the prosecutor to cross-examine defendant about prior out of state

criminal convictions or in denying defendant's motion to dismiss the charge of second-degree rape for insufficient evidence.

## I. Factual and Procedural Background

In January of 2012, J.B., who lived in Plymouth, North Carolina, met defendant through a telephone dating service. After talking to defendant on the phone for several weeks, she invited him to visit in person on the weekend of 8 January 2012. On 6 January 2012, a friend of J.B.'s picked up defendant in Greenville and brought him to Plymouth. When J.B. finished work, she and defendant purchased beer and food and went to a motel, where they talked, ate, drank beer, and had consensual sex. That night, defendant talked about his father, who he felt had mistreated him. The next day, J.B. went to work in the morning and afterwards she and defendant went to her trailer with more beer. J.B. slept about two hours, cooked food for defendant, and they had consensual sex.

Defendant continued drinking during the day and during the evening he became increasingly agitated about issues that he had with his father, and threatened to harm J.B. or himself. Defendant retrieved a machete from J.B.'s closet, pushed her onto the bed, punched J.B., choked her, held the machete to her neck, and forced her to have sex with him. After the forcible intercourse, defendant made her take a shower with him, after

which they dressed and both took some sedative-laced pain pills. J.B. and defendant dozed briefly, but when defendant awoke he was still very agitated and "proceeded to scream and holler." J.B. ran into a bathroom and called 911, at which point defendant ran out of the trailer.

When Deputies Ricks and Spencer of the Washington County Sheriff's Department arrived at J.B.'s trailer, Deputy Ricks noted that J.B. was "crying hysterically and shaking." The deputies took a statement from J.B., obtained a photo of defendant, photographed J.B.'s bruises, and took her to the hospital.

Defendant was arrested a few hours later, and at around 10:00 a.m. on 8 January 2012, Deputy Spencer met with defendant at the Washington County jail. Defendant waived his *Miranda* rights, and gave Spencer a statement about the events of the previous 36 hours. His account of the time he had spent with J.B. was similar to J.B.'s statement; specifically, he admitted to Spencer that he had forced J.B. to have sex on Saturday. He told Spencer that J.B. had threatened him with the machete, and that in response "he got angry and went and got the machete and put it up to her neck and threatened to cut her head off and then forced her to have sex with him[.]" J.B. had stated that defendant had raped her once; however, defendant told Spencer

that he forced himself on her twice. After Spencer reduced defendant's statement to writing, defendant read and initialed it.

Defendant was indicted on 23 July 2012 in an indictment whose language described second-degree rape, but whose caption and cited statute identified the charged offense as first-degree rape. Prior to trial, the trial court ruled that the indictment charged defendant with second-degree rape.

Defendant was tried before a jury on 28 and 29 January 2013. Defendant's mother testified that defendant, who grew up in Connecticut, suffered a head injury at age two, after which "his brain didn't develop like normal" and that he read at a third or fourth grade level and had difficulty with long term memory. Defendant's mother also testified that after defendant moved to North Carolina about three years earlier, he lived in Greenville for two years, and had spent "one year in jail."

Defendant testified that he was 36 years old, lived in Greenville, North Carolina, and was unemployed but received disability payments for "mental retardation." He recalled speaking with Spencer, but contended that he was "drunk" at the time and did not remember his answers to her questions, or remember telling Spencer that he had forced J.B. to have sex. He testified that he could not read the statement that he had

initialed. On cross-examination, defendant testified that he could not recall what happened during the weekend of 8 January 2012, and that he did not "know of" or recall any criminal convictions from Connecticut. Over objection, the prosecutor asked defendant about 5 prior criminal convictions in Connecticut. Defendant denied any recollection of those convictions. When asked on redirect examination, defendant testified that he remembered being arrested, but not what he was charged with.

On 29 January 2013 the jury found defendant guilty of second-degree rape. The trial court sentenced defendant to an active sentence of 73 to 100 months. Subsequently, the Department of Public Safety informed the trial court that the maximum sentence of 100 months did not correspond to the minimum sentence of 73 months, since defendant was convicted of a reportable sex offense as defined in N.C. Gen. Stat. § 14-208.6(4), and therefore was required to be sentenced under N.C. Gen. Stat. § 15A-1340.17(f). On 11 March 2013, the trial court amended its judgment and entered a maximum sentence of 148 months.

Defendant appeals.

## II. Analysis

### A. Defense Counsel Places the Plea Arrangement Offered by the State into the Record

In his first argument, defendant contends that the trial court committed reversible error by misstating the maximum sentence for second-degree rape. Defendant asserts that the trial court's failure to inform defendant of the maximum sentence for a conviction of a reportable sex offense "deprived the defendant of a full understanding of the ramifications of turning down the State's plea offer." We disagree.

N.C. Gen. Stat. § 15A-1340.17(f) states that:

> . . . [F]or offenders sentenced for a Class B1 through E felony that is a reportable conviction subject to the registration requirement of Article 27A of Chapter 14 of the General Statutes, the maximum term of imprisonment shall be equal to the sum of the minimum term of imprisonment and twenty percent (20%) of the minimum term of imprisonment, rounded to the next highest month, plus 60 additional months.

N.C. Gen. Stat. § 14-208.6(4) defines "reportable offense" to include a conviction for "a sexually violent offense, or an attempt to commit any of those offenses[,]" and N.C. Gen. Stat. § 14-208.6(5) defines a "sexually violent offense" to include second-degree rape. Thus, upon defendant's conviction for second-degree rape, his maximum sentence is subject to the provisions of N.C. Gen. Stat. § 15A-1340.17(f).

In this case, after the jury was impaneled, but before the first witness was called to testify, defendant's attorney asked to "place on the record" that defendant was charged with first-degree rape, a Class B1 felony, and that the State had offered to allow him to plead guilty to a Class D felony. Defendant had decided not to accept the plea offer and to proceed to trial. Defense counsel did not identify the Class D felony to which defendant could plead guilty[1] or state the specific terms of the plea offer. After defense counsel put defendant's decision to proceed to a jury trial on the record, the trial court ruled that the indictment actually charged the offense of second-degree rape, a Class C felony. The trial court then addressed defendant:

> THE COURT: The Court has reviewed the indictment and finds that it does properly allege second-degree rape which is a Class C felony, and you're reading from the second level, and, Mr. Ruffin, if you got convicted of this, then the Court could sentence you to a minimum sentence of anywhere between 50 months in the mitigated range to a maximum minimum sentence of 83 months. If you got 50 months, that would correspond to a maximum of 72 months. If you got 83 months, then that would correspond to a maximum of 112 months. Do you understand that?
>
> DEFENDANT: Yes.

---

[1] The only potential Class D felony that is apparent on the record before us would be attempted second degree rape.

THE COURT: Okay. Anything the State wants to say about that?

PROSECUTOR: No, Your Honor.

THE COURT: Okay. [defense counsel], anything further?

DEFENSE COUNSEL: No, Your Honor.

THE COURT: Okay. And, Mr. Ruffin, at this time is it your desire to proceed on with the trial of this case knowing that the indictment charges second-degree rape, a Class C felony?

DEFENDANT: Yes.

On appeal, defendant argues that "the trial court's improper statement of the maximum punishment deprived the defendant of an informed decision as to whether or not he should accept the State's plea offer[.]" As set out above, after the trial court ruled that defendant was charged with a Class C offense, and not a Class B1 felony, the court informed defendant that if convicted he might receive a minimum sentence of 50 to 83 months, corresponding to a maximum sentence of 72 to 112 months. The trial court did not inform defendant that, if he were convicted of second-degree rape, his maximum sentence would be determined under N.C. Gen. Stat. § 15A-1340.17(f), which would result in a longer maximum sentence than under the felony sentencing grid set out in N.C. Gen. Stat. § 15A-1340.17(c). However, based upon the facts of this case, we hold that this

omission did not deprive defendant of an informed decision or entitle him to appellate relief.

Assuming that (1) defendant were convicted of either first-degree rape, second-degree rape, or attempted second-degree rape; (2) defendant was a prior record level II offender, which was the record level used by defense counsel and the trial court in their colloquy with defendant, and; (3) rounding the length of each sentence to the nearest month, the range of sentences to which defendant was exposed was:

| Offense Class | Minimum Sentence Range (Months) | Corresponding Maximum Sentence from Sentencing Grid | Increased Maximum Sentence |
|---|---|---|---|
| B1 | 221 <br> 276 | 278 <br> 344 | 325 <br> 391 |
| C | 67 <br> 83 | 93 <br> 112 | 140 <br> 160 |
| D | 59 <br> 73 | 83 <br> 100 | 131 <br> 148 |

Defense counsel represented to the trial court that defendant had elected to be tried for a Class B1 offense, for which he faced a minimum sentence of 221 months, or 18 years, and that he had rejected an opportunity to plead guilty to a Class D offense, for which the minimum sentence was 59 months, or approximately 5 years. Given that defendant had decided to risk a sentence of <u>at least</u> 18 years rather than plead guilty,

there is no basis to infer that he might have changed his mind based on the difference between the maximum presumptive sentence for a Class C offense as derived from the sentencing grid – 112 months, or about 9 years – and the increased maximum sentence for a Class C offense, which is 159 months, or about 13 years. We conclude that on the facts of this case, the trial court's omission of the increased maximum sentence under N.C. Gen. Stat. § 15A-1340.17(f) does not entitle defendant to relief.

In arguing for a different result, defendant urges us to apply N.C. Gen. Stat. § 15A-1022(a) to the facts of this case. This statute provides that a superior court judge may not accept a defendant's guilty plea "without first addressing him personally" and informing him of his right to remain silent, ascertaining that he understands the charge against him, his right to plead not guilty, and the range of possible sentences he might receive, and "[i]nforming him that by his plea he waives his right to trial by jury and his right to be confronted by the witnesses against him[.]" N.C. Gen. Stat. § 15A-1022(a)(4).

"Because a guilty plea waives certain fundamental constitutional rights such as the right to a trial by jury, our legislature has enacted laws to ensure guilty pleas are informed and voluntary." *State v. Agnew*, 361 N.C. 333, 335, 643 S.E.2d

581, 583 (2007) (citing *State v. Sinclair*, 301 N.C. 193, 197, 270 S.E.2d 418, 421 (1980)). However, a defendant who elects to proceed to trial is exercising, rather than waiving, his constitutional rights. A trial court is not required to make an inquiry into a defendant's decision not to plead guilty. Further, in this case defense counsel represented to the trial court that defendant had already made the decision to proceed to trial on a charge of first-degree rape. Counsel did not request the trial court's assistance in persuading defendant to change his mind, or indicate doubts as to defendant's competence to make this decision, but simply stated that he wanted to put defendant's decision "on the record." We conclude that N.C. Gen. Stat. § 15A-1022 is not applicable to this case and that defendant is not entitled to relief on this basis.[2]

### B. Cross-examination of Defendant

In his next argument, defendant contends that the trial court erred by "allowing the district attorney to cross-examine

[2] Defendant also argues that the trial court erred by not advising defendant of "the highest level in the aggravated range[.]" However, N.C. Gen. Stat. § 15A-1340.16(a6) provides that the "State must provide a defendant with written notice of its intent to prove the existence of one or more aggravating factors under subsection (d) of this section . . . at least 30 days before trial[.]" The record is devoid of any indication that the State provided defendant with the requisite pretrial notice of intent to prove the existence of any aggravating factors, or that the State expressed such an intention during the trial. We hold, based on the record before us, that the issue of aggravating factors was not pertinent to this trial.

the defendant about alleged prior convictions after the defendant initially indicated that he did not recall any" and that the court erred in allowing the prosecutor "over objection, [to] read from a list of charges on an unverified DCI printout." We disagree.

As a general rule, the "scope of cross-examination lies within the discretion of the trial judge, and the questions must be asked in good faith." *State v. Forte*, 360 N.C. 427, 442-443, 629 S.E.2d 137, 147 (2006) (citing *State v. Williams*, 279 N.C. 663, 675, 185 S.E.2d 174, 181 (1971)). N.C. Gen. Stat. § 8C-1, Rule 609(a) provides that "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted if elicited from the witness . . . during cross-examination[.]" In addition, "evidence which would otherwise be inadmissible may be permissible on cross-examination 'to correct inaccuracies or misleading omissions in the defendant's testimony or to dispel favorable inferences arising therefrom.'" *State v. Braxton*, 352 N.C. 158, 193, 531 S.E.2d 428, 448 (2000) (quoting *State v. Lynch*, 334 N.C. 402, 412, 432 S.E.2d 349, 354 (1993)). However, "a cross-examiner can elicit only 'the name of the crime and the time, place, and

punishment for impeachment purposes under Rule 609(a)[.]'" *Id.* (quoting *Lynch*, 334 N.C. at 410, 432 S.E.2d at 353).

In this case, defendant was asked on cross-examination if he had been convicted of criminal offenses while he lived in Connecticut. He responded: "Not that I know of, that's a long time." The prosecutor then questioned defendant about specific criminal convictions, based on a document described at trial as "a DCI printout showing the convictions."[3] The prosecutor did not attempt to elicit details about the facts of the offenses, or pursue the matter further when defendant denied remembering his alleged prior convictions. On appeal, defendant does not dispute that the document relied upon by the prosecutor provided a good faith basis for his questions, and does not argue that the trial court abused its discretion in allowing this cross-examination or that the prosecutor exceeded the permissible scope of cross-examination. We conclude that there was no error in allowing the prosecutor to cross-examine defendant about prior convictions.

Defendant appears to argue on appeal that the district attorney was barred from questioning him about his criminal record unless (1) his questions would also have been admissible under N.C. Gen. Stat. § 8C-1, Rule 404(b), and (2) the prosecutor was in possession of a verified copy of the

---

[3] This document has not been included in the record of this case.

Connecticut judgments meeting the requirements for determining a defendant's prior record level for purposes of Structured Sentencing under N.C. Gen. Stat. § 15A-1340.14. Defendant cites no authority for either proposition, and we reject these arguments.

Moreover, even assuming, *arguendo*, that the trial court erred by allowing the cross-examination, defendant has failed to show prejudice. Under N.C. Gen. Stat. § 15A-1443(a), a "defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant." Defendant does not argue that the trial would have had a different result had the cross-examination not been permitted, and our own review does not suggest that the cross-examination had an effect on the jury's verdict. Moreover, we note that defendant's mother testified that defendant had spent "a year in jail" and that on redirect examination defendant testified that he remembered his arrests, just not the names of the charged offenses. Given that defendant elicited additional evidence of his criminal history, and given the substantial

evidence presented by the State, we cannot hold that defendant was prejudiced by this cross-examination.

## C. Sufficiency of the Evidence

In his last argument, defendant contends that the trial court erred by denying his motion to dismiss for insufficiency of the evidence. We disagree.

### 1. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (internal quotation omitted)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citation omitted). "In making its determination, the trial court must consider all evidence admitted, whether

competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994). "Contradictions and discrepancies do not warrant dismissal of the case; rather, they are for the jury to resolve. Defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Franklin*, 327 N.C. 162, 172, 393 S.E.2d 781, 787 (1990) (citations omitted). In this case, since defendant presented evidence, we only review the sufficiency of the evidence as of the close of all of the evidence. *See State v. Britt*, 87 N.C. App. 152, 154, 360 S.E.2d 291, 292 (1987).

## 2. Analysis

N.C. Gen. Stat. § 14-27.3(a) states that "[a] person is guilty of rape in the second-degree if the person engages in vaginal intercourse with another person: (1) By force and against the will of the other person[.]" Therefore, the "elements of second-degree rape are that the defendant (1) engage in vaginal intercourse with the victim; (2) by force; and (3) against the victim's will. N.C. Gen. Stat. § 14-27.3." *State v. Scercy*, 159 N.C. App. 344, 352, 583 S.E.2d 339, 344, *disc. review denied*, 357 N.C. 581, 589 S.E.2d 363 (2003).

At trial, J.B. testified that defendant brandished a machete and beat her in order to force her to have vaginal intercourse against her will. Her testimony was corroborated by photos of her bruises and by her statements to the investigating officers. Moreover, Deputy Spencer testified that defendant made a statement in which he admitted threatening J.B. with a machete in order to force her to have sex. This evidence was sufficient to merit the submission of the charge of second-degree rape to the jury.

On appeal, defendant does not dispute the existence of the evidence discussed above. Rather, he directs our attention to other evidence, such as the parties' consumption of alcohol, and the fact that J.B. acknowledged engaging in several prior instances of consensual sex with defendant, that tended to weaken the State's case. However, "[c]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Johnson*, 203 N.C. App. 718, 724, 693 S.E.2d 145, 148 (2010) (citing *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). The trial court did not err in denying defendant's motion for dismissal.

For the reasons discussed above, we conclude that defendant had a fair trial, free of reversible error.

NO ERROR.

Judges STEPHENS and DAVIS concur.