IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-582

Filed 4 March 2026

North Carolina Industrial Commission, I.C. No. 22-707155

CHERYL MCDONALD, Widow, and LOGAN MCDONALD, Minor Child (By and Through His Guardian ad Litem, HEATHER LOWE) of MICHAEL MCDONALD, Deceased Employee, Plaintiffs,

v.

CITY OF WINSTON-SALEM, Employer, Self-Insured, Defendant.

Appeal by Plaintiffs from opinion and award entered 31 January 2025 by the Full Commission in the North Carolina Industrial Commission. Heard in the Court of Appeals 18 November 2025.

*Daggett Shuler, by Benjamin P. Winikoff, for Plaintiffs-Appellants.*

*Orbock Ruark & Dillard, PC, by Barbara E. Ruark and Tyler Younts, for Defendant-Appellee.*

COLLINS, Judge.

Plaintiffs Cheryl McDonald and Logan McDonald, through his guardian ad litem, appeal from an opinion and award entered by the North Carolina Industrial Commission that denied Plaintiffs' claim for death benefits.[1] Plaintiffs argue that the Full Commission erred in numerous ways, including by failing to address Plaintiffs' injury-by-accident claim and certain evidentiary issues listed on Plaintiffs'

---

[1] The case caption has been amended to remove the double use of the word employer.

Form 44 Application for Review. After careful review, we vacate and remand the opinion and award to the Full Commission.

## I. Background

Decedent Michael McDonald was employed by the City of Winston-Salem Police Department from 1996 until his death on 22 October 2021, from complications of COVID-19 ("Covid"). At the time of his death, he was married to Cheryl McDonald and was the father of Logan McDonald, a minor child with whom he shared custody with Heather Lowe. Decedent served as a sergeant supervising the Department's DWI Task Force, a multi-agency unit focused on impaired driving enforcement. His duties included conducting routine traffic stops, administering sobriety tests, investigating incidents, making arrests, booking suspects into jail, and responding to emergency 911 calls.

In the month before his death, September 2021, Decedent worked at least seventeen ten-hour shifts on the DWI Task Force and conducted numerous traffic stops, arrests, and alcohol sensor tests. Decedent's body camera footage shows that he typically wore a mask in city buildings and when transporting suspects in his patrol vehicle; the footage also shows that Decedent frequently did not wear a mask during traffic stops when in close proximity to and speaking with members of the public who were also frequently unmasked. During the month of September 2021, Decedent's work included extensive traffic activity and public interaction, including more than fifty vehicle stops, eight alcohol sensor tests and full field sobriety tests,

six arrests, and participation in an accident investigation.

From 1 October 2021 through 5 October 2021, Decedent was assigned to operate the mobile command vehicle ("MCV") at the 2021 Carolina Classic Fair, a large public event organized by the City of Winston-Salem and held for the first time since the onset of the Covid pandemic. Some city leaders, along with the Chief of Police, objected to holding the Fair because of the stress that Covid placed on the Department, but the majority of city leaders voted to hold the Fair and to increase police officer pay for those officers working the Fair. Working at the Fair was not a typical duty for the DWI Task Force, and Decedent had not worked in the MCV before the Fair in 2021. On 1 October 2021, Decedent was assigned as the manager and communications operator in the MCV for the first time because of staffing shortages. The MCV housed up to ten officers at a time, many of whom were often unmasked inside the MCV while eating and talking.

Prior to and during the Fair, Decedent interacted with several colleagues. Lieutenant Hamilton met with Decedent in his office while unmasked a few days before the Fair and then again inside the MCV on 1 and 2 October 2021; Lieutenant Hamilton began experiencing Covid symptoms on 3 October and tested positive for Covid on 4 October. That same day, another officer[2] reported testing positive for Covid with symptoms starting on 3 October. On 5 October, Officer Saintsing met

---

[2] The identity of the officer was known to Defendant but is redacted from the exhibits.

with Decedent and Captain Doby inside the MCV for approximately thirty minutes, during which none wore masks. Decedent reported a headache that evening to Officer Saintsing and tested positive for Covid on 6 October. Decedent texted Lieutenant Hamilton that he had tested positive for Covid and that "the fair is not a safe place"; Lieutenant Hamilton agreed. Decedent emailed the Department, detailing his work at the Fair since 1 October, stating that his cough started on 3 October and his fever on 6 October, and noting close proximity to another officer who tested positive for Covid. That same evening, he texted a friend that he "got the Rona from working the fair." On 14 October, a city employee confirmed Decedent's absence from work would be coded as "Q" time because Decedent "was exposed at work" to Covid.

Over the course of September 2021 and the first ten days of October 2021, fifteen officers tested positive for Covid. The Chief of Police testified that seven of the officers who tested positive in the first ten days of October 2021 worked at the Fair, and Lieutenant Hamilton testified that at least two other officers who contracted Covid worked at the Fair. Officer King testified that officers generally discussed the rising number of sick officers working the Fair.

In his personal time, Decedent lived full-time with his wife and parents, and his son, Logan, lived with him part-time during the week; Logan lived with his mother, Heather Lowe, for the remainder of the week. Decedent and his family generally avoided large gatherings and consistently wore masks in public, but he attended one public funeral on 2 October 2021 where Covid precautions were in effect;

Decedent did not sit with the general public at the funeral but instead sat with fellow officers and then sat alone at a lunch following the funeral. None of the funeral's attendees were known to test positive for Covid. Decedent's wife, son, and parents tested negative for Covid in October 2021, and Heather Lowe and her husband also tested negative for Covid in September and October 2021. Credit card statements from Decedent and his wife's accounts show transactions at approximately twenty businesses in the three weeks leading up to his Covid illness, including at least one restaurant visit. Other than the restaurant visit, there was no evidence presented as to whether Decedent visited the businesses in person or what he did or purchased at the businesses.

After testing positive for Covid, Decedent's condition deteriorated; he was hospitalized on 18 October, placed on a ventilator on 21 October, and died on 22 October 2021 from cardiac arrest and respiratory failure caused by Covid pneumonia.

On 4 February 2022, Plaintiffs Cheryl McDonald and Logan McDonald, through his guardian ad litem, filed a Form 18 with the North Carolina Industrial Commission, alleging that Decedent's death was compensable under the Workers' Compensation Act as either an occupational disease or an injury by accident. Defendant City of Winston-Salem denied the claim on 18 February 2022. During the course of proceedings before the Commission, Plaintiffs filed multiple motions to compel discovery, specifically seeking information regarding the identities of the officers who had contracted Covid during the months of September and October 2021.

A deputy commissioner granted in part and denied in part Plaintiffs' first motion to compel, ordering Defendant to produce any logs or lists of reported Covid cases in officers within the Department and ordering Defendant to redact all names and personal identifying information.

Defendant then filed a motion to reconsider the deputy commissioner's order, arguing in part that Defendant "has no way to track close contact of a positive Covid individual with [Decedent]." The deputy commissioner issued an amended order, allowing Defendant's motion to reconsider and stating that "Defendant is entitled to rely upon the information provided to the Medical Department" and "is not required to question all City employees . . . regarding their health or positive Covid status[.]" The order further provided that Defendant was "not required to disclose interviews, notes, reports, or statements taken or prepared by counsel for Defendant" that pertained to Decedent's death. Plaintiffs filed a second motion to compel and, alternatively, a motion for sanctions for spoliation; the deputy commissioner denied Plaintiffs' second motion to compel and motion for sanctions for spoliation.

Plaintiffs presented testimony from Dr. Blair Brown, Decedent's treating physician, and Dr. Julie Swann, an expert in industrial engineering and public health. Both opined that Decedent's employment placed him at greater risk of contracting Covid than the general public, and that his illness was more likely than not work related. Defendant presented testimony from Dr. Steven Koehler, a forensic epidemiologist, and Dr. Allan Morrison, an infectious disease physician and

epidemiologist. Both testified that Covid was widespread in the community by October 2021, that Decedent's risk of exposure was no greater at work than elsewhere, and that his symptoms beginning 3 October 2021 were inconsistent with exposure at the Fair. They concluded that the source of his infection could not be determined and was not shown to be occupational.

On 23 January 2024, the deputy commissioner issued an opinion and award denying Plaintiffs' claim for death benefits. Plaintiffs appealed to the Full Commission and filed a Form 44 Application for Review, listing numerous alleged errors for the Full Commission's review, including that the deputy commissioner erred by not finding that Decedent's death from Covid was a compensable injury by accident and by making certain evidentiary errors. During the pendency of the appeal, Plaintiffs filed a motion to supplement the record and for judicial notice, which the Full Commission granted in part and denied in part. On 31 January 2025, the Full Commission entered its opinion and award denying Plaintiffs' claim for death benefits. Plaintiffs timely filed a notice of appeal to this Court.

## II.  Discussion

Plaintiffs first argue that the Full Commission erred by failing to address Plaintiffs' injury-by-accident claim and numerous evidentiary issues listed on their

Form 44 Application for Review.[3]

N.C. Gen. Stat. § 97-85 provides for the Full Commission's review of a deputy commissioner's opinion and award. When a matter is appealed to the Full Commission pursuant to this statute, "it is the duty and responsibility of the [F]ull Commission to decide all of the matters in controversy between the parties." *Vieregge v. N.C. State Univ.*, 105 N.C. App. 633, 638 (1992) (citation omitted). Accordingly, the Full Commission must "respond to the questions directly raised" on appellant's Form 44 Application for Review. *Id.* at 639.

Furthermore, the Full Commission must make "detailed findings of fact and conclusions of law with respect to every aspect of the case before it." *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 482 (1988). The findings of fact "must be sufficiently positive and specific to enable the court on appeal to determine whether they are supported by the evidence and whether the law has been properly applied to them." *Thomason v. Red Bird Cab Co.*, 235 N.C. 602, 605-06 (1952). "It is likewise plain that th[is] [C]ourt cannot decide whether the conclusions of law and the decision of the [Full] [C]ommission rightly recognize and effectively enforce the rights of the parties . . . if the [Full] [C]ommission fails to make specific findings as to each material fact upon which those rights depend." *Id.* at 606.

---

[3] Plaintiffs' issue 1 ("The Industrial Commission erred by making no findings of fact or conclusions of law on crucial facts necessary to determine the plaintiffs' right to compensation.") and issue 2 ("The Industrial Commission erred by denying plaintiffs' motions to compel and, alternatively, for sanctions.") are intertwined, and we review them together in our Sections A and B.

Where the Full Commission fails to address all the issues specifically raised on the appellant's Form 44 and fails to make sufficient findings of fact and conclusions of law, the matter must be vacated and remanded for further review. *Vieregge*, 105 N.C. App. at 641-42; *see Lewis v. N.C. Dep't of Corr.*, 138 N.C. App. 526, 529 (2000).

**A. Injury by accident**

Here, Plaintiffs raised the claim that Decedent's death was the result of an "injury by accident" on their Form 18 and during oral argument, and they alleged the deputy's commissioner's denial of that claim was error on their Form 44. The Full Commission failed to address Plaintiffs' claim of injury by accident. The Full Commission found that "[Plaintiffs] filed a claim for compensation and death benefits under the North Carolina Workers' Compensation Act. The claim was denied, and scheduled for hearing for an opinion as to whether Decedent's contraction of COVID-19 was a compensable occupational disease." This finding fails to acknowledge Plaintiffs' claims for both an occupational disease *and* an injury by accident, and it fails to acknowledge that the deputy commissioner denied the injury-by-accident claim. Additionally, this finding contradicts the Full Commission's Stipulation 8, which states that Plaintiffs' Form 18 claimed both occupational disease and injury by accident.

Because the Full Commission failed to address Plaintiffs' injury-by-accident claim raised on their Form 44, the Full Commission violated N.C. Gen. Stat. § 97-85. *See Vieregge*, 105 N.C. App. at 641-42.

- 9 -

## B. Evidentiary appeals

Plaintiffs further argue that the Full Commission failed to address evidentiary issues five through twelve raised on their Form 44.

### 1. Issue 5

Issue 5 on Plaintiffs' Form 44 states:

> The Deputy Commissioner erred in denying plaintiffs' Motion to Compel dated February 10, 2023 and permitting defendant to not obtain information that shows the identity of the other officers who contracted COVID at the fair. (Ex 2564). Defendants are only entitled to refuse the production of relevant employment records if those records are privileged. 11 NCAC 23A .0605; *Willis v. Duke Power*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976). No such privilege exists for the records sought in this case, and if it did, the records could have been produced pursuant to a protective order. The identities of other police officers who had COVID at the same time as Sgt. McDonald are relevant to this case.

Issue 5 pertains to Plaintiffs' first motion to compel, which the Full Commission failed to address in its opinion and award. The Full Commission made no findings of fact or conclusions of law as to the first motion to compel–specifically, whether the records containing the identities of the officers who contracted Covid at the Fair were privileged and whether the records could have been produced pursuant to a protective order. Because the Full Commission failed to address Plaintiffs' Issue 5, the Full Commission violated N.C. Gen. Stat. § 97-85. *See Vieregge*, 105 N.C. App. at 641-42.

### 2. Issue 6

Issue 6 on Plaintiffs' Form 44 states:

> The Deputy Commissioner erred in granting Defendant's motion for reconsideration dated February 27, 2023 (Ex 2619, 2628) and permitting defendant to not obtain information that shows the identity of the other officers who contracted COVID at the fair. (Ex 2564). Defendants are only entitled to refuse the production of relevant employment records if those records are privileged. 11 NCAC 23A .0605; *Willis v. Duke Power*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976)[.] No such privilege exists for the records sought in this case, and if it did, the records could have been produced pursuant to a protective order. The identities of other police officers who had COVID at the same time as Sgt. McDonald are relevant to this case.

The Full Commission failed to address whether the deputy commissioner erred by granting Defendant's motion for reconsideration and permitting Defendant to withhold records containing the identities of the officers who contracted Covid at the Fair. Because the Full Commission failed to address Plaintiffs' Issue 6, the Full Commission violated N.C. Gen. Stat. § 97-85. *See Vieregge*, 105 N.C. App. at 641-42.

### 3. *Issue 7*

Issue 7 on Plaintiffs' Form 44 states:

> The Deputy Commissioner erred in denying Plaintiffs motion for judicial notice of statistical evidence dated April 5, 2023. (Ex 104). *See Lea Co v. N.C. Bd. of Transp.*, 304 N.C. 603, 615, 304 S.E.2d 164, 173-174 (1983) (citing statistical evidence to distinguish between "Acts of God" and "reasonably foreseeable events"); *Hutchens v. Hankins*, 63 N.C. App. 1, 24, 303 S.E.2d 584, 598 (1983) ("[t]his reasonable foreseeability of harm is evidenced by the statistics of auto accidents and carnage on our highways") . . . . The mortality statistics and the public laws referenced in the motion are data showing increased risk for law

enforcement.

The Full Commission addressed Plaintiffs' motion for judicial notice, Defendant's response, and the deputy commissioner's order denying Plaintiffs' motion at length in the "evidentiary rulings" section of the opinion and award. Further, the Full Commission's finding of fact 34 states, "At Plaintiffs' request, the Commission takes judicial notice that the Officer Down Memorial website states that in the United States there were 697 line-of-duty deaths in 2021, among all law enforcement officers and, of these 490 were caused by COVID-19[.]" The finding further states, "[I]n North Carolina, there were 25 line-of-duty deaths in 2021, of these 19 were caused by COVID-19. The Commission assigns the information on this website little weight as this is not a government-maintained website and the statistics are not common knowledge or subject to ready and accurate determination." Because the Full Commission addressed Plaintiffs' Issue 7, the Full Commission did not violate N.C. Gen. Stat. § 97-85 with respect to Issue 7.

### 4. *Issue 8*

Issue 8 on Plaintiffs' Form 44 states: "The Deputy Commissioner erred in prohibiting testimony on the identities of other Officers who tested positive for COVID."

The Full Commission did not address whether the deputy commissioner erred by prohibiting testimony on the identities of other officers who tested positive for Covid. Because the Full Commission failed to address Plaintiffs' Issue 8, the Full

Commission violated N.C. Gen. Stat. § 97-85. *See Vieregge*, 105 N.C. App. at 641-42.

### 5. *Issue 9*

Issue 9 on Plaintiffs' Form 44 states:

> The Deputy Commissioner erred in denying Plaintiff's post-hearing motion to compel and motion for spoliation finding. (Exhibits C-E To Plaintiff's motion to supplement the record). Defendants are only entitled to refuse the production of relevant employment records if those records are privileged. 11 NCAC 23A .0605; *Willis v. Duke Power*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976). No such privilege exists for the records sought in this case. The defendant had this information and lost it despite having knowledge that Sgt. McDonald's family was pursuing a death claim. Plaintiffs met their burden in showing that the opposing party had notice of the potential for future litigation, and that the lost evidence was relevant and potentially supportive of the requesting party's claim. . . .

In the "evidentiary rulings" section of the opinion and award, the Full Commission described Plaintiffs' post-hearing motion to compel and motion for sanctions for spoliation and quoted portions of Defendant's responses to the motions. Without making findings of fact or conclusions of law, the Full Commission simply "denie[d] Plaintiffs' motion to compel and motion for sanctions." As the Full Commission failed to make findings of fact and conclusions of law to support its disposition, *Joyner*, 92 N.C. App. at 482, it failed to adequately address Plaintiffs' Issue 9, violating N.C. Gen. Stat. § 97-85. *See Vieregge*, 105 N.C. App. at 641-42.

### 6. *Issue 10*

Issue 10 on Plaintiffs' Form 44 states:

> The Deputy Commissioner erred in sustaining the objection at the sidebar and subsequent question (T 84-85) to prohibit witnesses from disclosing the identities of the other officers who tested positive for COVID-19 when under Rule 803(3) as Then Existing Mental, Emotional, or Physical Condition.– A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) makes such statements admissible.

The Full Commission failed to address whether the deputy commissioner erred by sustaining Defendant's objection at the sidebar and subsequent request to prohibit witnesses from disclosing the identities of the officers who tested positive for Covid. Further, the Full Commission's opinion and award is silent on Rule 803 and whether it applies to the prohibited testimony. Because the Full Commission failed to address Plaintiffs' Issue 10, the Full Commission violated N.C. Gen. Stat. § 97-85. *See Vieregge*, 105 N.C. App. at 641-42.

7. *Issue 11*

Issue 11 on Plaintiffs' Form 44 states:

> The Deputy Commissioner erred in sustaining the objection as to whether COVID-19 was being spread among WSPD Officers at the Carolina Classic Fair (T 89-92) and that other officers were out with COVID-19, under Rule 803(3) as Then Existing Mental, Emotional, or Physical Condition.– A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health). There is no requirement that an individual present a copy of their covid test result for the statements to be admissible.

The Full Commission failed to address whether the deputy commissioner erred by sustaining Defendant's objection to evidence concerning whether Covid was being spread amongst officers at the Fair and whether officers were out sick before and during the Fair. Further, the Full Commission's opinion and award is silent on Rule 803 and whether it applies to the prohibited evidence. Because the Full Commission failed to address Plaintiffs' Issue 11, the Full Commission violated N.C. Gen. Stat. § 97-85. *See Vieregge*, 105 N.C. App. at 641-42.

8. ***Issue 12***

Issue 12 on Plaintiffs' Form 44 states:

> The Deputy Commissioner erred in sustaining the objection as to the identities of the other officers Lt. Hamilton was told had COVID (T 199) when the defendant opened the door to the testimony by asking the witnesses if other officers, Doby or Pritchard, had tested positive for COVID-19 (T 182). *State v. Lynch*, 334 N.C. 402, 412, 432 S.E.2d 349, 354 (1993) (observing that when party "opens the door" to issue, opposing party may elicit evidence that would otherwise be incompetent or irrelevant to "dispel favorable inferences arising" from party's evidence).

The Full Commission failed to address whether the deputy commissioner erred by sustaining Defendant's objection to testimony about the identities of the other officers whom Lieutenant Hamilton was told had Covid. Further, the Full Commission failed to address whether Defendant opened the door to the testimony. Because the Full Commission failed to address Plaintiffs' Issue 12, the Full Commission violated N.C. Gen. Stat. § 97-85. *See Vieregge*, 105 N.C. App. at 641-42.

**C. Summary**

In summary, while Plaintiffs expressly challenged the denial of their injury-by-accident claim and numerous evidentiary rulings related to discovery, the Full Commission failed to address any of the issues raised except Plaintiffs' Issue 7. These omissions were not a matter of evidentiary weight; they were failures to exercise the Full Commission's statutory duty. Without findings and conclusions on the injury-by-accident claim or the evidentiary issues raised on Plaintiffs' Form 44, this Court cannot conduct meaningful appellate review of the opinion and award. *Thomason*, 235 N.C. at 606; *Perry v. CKE Res., Inc.*, 187 N.C. App. 759, 763 (2007). In light of this conclusion, we do not reach Plaintiffs' remaining arguments that the Full Commission misapprehended the law by determining that (1) Decedent's job did not place him at an increased risk of contracting Covid and (2) Plaintiffs did not prove causation through circumstantial evidence, and that it erred by relying on expert opinions based on assumptions and speculation.

## III. Conclusion

For the foregoing reasons, we vacate and remand the opinion and award to the Full Commission "for further review, findings[,] and entry of an appropriate order[.]" *Vieregge*, 105 N.C. App. at 641.

VACATED AND REMANDED.

Judges ARROWOOD and HAMPSON concur.